John **ENLOE**, Plaintiff-Respondent,

v.

**PITTSBURGH PLATE GLASS COMPANY,**
a Corporation, Defendant-Appellant.

No. 52818.

Supreme Court of Missouri,
Division No. 2.

May 13, 1968.

Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for plaintiff-respondent.

H. L. C. Weier, Dearing, Richeson, Weier, Roberts & Wegmann, Hillsboro, for appellant.

FINCH, Presiding Judge.

Defendant (Pittsburgh) appeals from a verdict and judgment against it for $35,-000, which gives us jurisdiction.

Pittsburgh contracted with Fuller Construction Company to wreck certain buildings and do various construction jobs on its premises. Approximately three weeks before plaintiff was injured, Pittsburgh loaned to Fuller its Yale Forklift Truck No. 13 for use in connection with this work. Pittsburgh retained the obligation to repair and maintain the truck.

This forklift was used by Fuller in taking pallets of firebrick from boxcars and stacking them in a warehouse for later use in construction. Thomas Kiefer, an employee of Fuller, was designated by it to operate the forklift. Before turning it over to Fuller for operation by Kiefer, Earl Gooch, who was Pittsburgh's liasion man with Fuller, determined that Kiefer could operate a forklift but gave no instructions to him.

Kiefer operated the forklift about three weeks before plaintiff was injured. His laborer-helper during most of that time was one Robert Staples. Kiefer was not called as a witness, but Staples did testify. He stated that on two or three occasions, when Kiefer was not on the truck but the motor was running, it would jump and move forward two to three feet and he would have to get out of the way. Staples did not know whether Kiefer, before getting off, put the controls at any certain position, or whether the truck was in gear, or whether the brake was on.

These incidents were reported to Gooch, the Pittsburgh liaison man, and the truck was taken to the Pittsburgh maintenance shop. There a mechanic put a new set of points into the distributor cap but did nothing else.

After the forklift was returned to the job, it again jumped or moved forward while the motor was running but Kiefer was not on the truck. This, too, was reported to Gooch.

Three or four days before the plaintiff was injured, Staples left his job with Fuller and plaintiff then was assigned as the new laborer-helper to work with Kiefer in the brick unloading operation. He was not informed of the previous difficulty with the forklift, nor was he warned that it might jump or move forward at times when Kiefer was not on it.

On the day when plaintiff was injured, Kiefer sought to pick up and move a pallet of bricks to another location. The fork kept hitting something and would not go under the pallet. Kiefer backed the forklift away and then asked plaintiff to look under the pallet to see what the fork was hitting. When this request was made, Kiefer was on the machine. Plaintiff then bent over to look under the pallet. He had to bend down considerably in order to see, and while he was bent over the truck suddenly moved forward and the prong of the fork hit him under the shoulder blade, pinning him against the bricks. Plaintiff looked back and saw Kiefer was off of the forklift and on the warehouse floor but was trying to get back on to stop it. The motor of the forklift was running.

After the injury to plaintiff, Fuller rented and used another forklift truck and ceased using Pittsburgh's Fork Lift No. 13.

Defendant called as a witness Mr. Carliss, manager of engineering for the Yale Division of Eaton, Yale and Towne, manufacturer of the forklift in question. He testified that the truck is equipped with automatic transmission similar to that used in an automobile. There is a forward and reverse control lever located under the steering column. To move forward, the shift lever is pushed forward to an area marked F, and to go backward, the shift lever is moved toward the driver into an area marked R. The area in the center is for neutral and is marked by an arrow. This shift lever is connected by what was referred to as linkage to the control valve of the automatic transmission and the shifting gears for high and low speed.

Carliss testified that there was some looseness or play in the gearshift handle. He stated that in spite of looseness in the linkage connecting the gearshift handle,

when the lever was shifted into forward, you could see that you were in the area of the F and that you were above the arrow when you were in neutral. He went on to say that when he had examined the truck that morning, the lever could be slightly to either side of the arrow or directly on the arrow when the gear was in neutral. With reference to whether the lever would exactly show the position of the gears, he said, "Not exactly, but I would say within reason, that you would know where you were." As to whether one could think the gearshift had been placed in neutral when in fact it was in forward, he said that "is possible." The witness went on to explain that the clicking sensation in connection with the shift would also indicate to the operator what gear the truck was in. He said, "There are two ways to tell, one, of course, is the marking on the box which give you the general location and the precise clicking and the feel which it senses in your hand operating the lever of the three points." He stated that the likelihood that the operator would think the gears were in neutral when actually in forward position was extremely remote.

The floor of the warehouse was level. Mr. Carliss testified that he had tested the truck that morning at idling speed, intermediate speed and high speed, and the truck would not creep when in neutral.

This is not a res ipsa loquitur or general negligence case. Plaintiff pleaded acts of specific negligence in his petition. Under those circumstances, he may not submit under the res ipsa loquitur or general negligence doctrine. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W. 2d 59, 63[3]. Plaintiff concedes that this is the rule and insists that the case was submitted on the basis of specific negligence.

Defendant first asserts that plaintiff did not make a submissible case and that the court should have sustained its motion for a directed verdict at the close of all the evidence. We have concluded that a submissible case was made.

Viewing the evidence most favorably to plaintiff, there was evidence from which a jury could have found that the linkage between the control valve and gears and the shift lever on the truck was loose and that the lever indicated to the operator that the truck was in neutral gear when in fact it was in forward gear. Mr. Carliss testified that this was possible. It had jumped or moved forward under similar circumstances on two of three occasions within a three-week period. Carliss also stated that the truck would not move on a level floor when in neutral, and this was recognized and in fact conceded by counsel for plaintiff. Consequently, the evidence indicated that for the forklift truck to move forward on the warehouse floor, it had to be in gear. If, as the jury could have found, the truck was left in gear by reason of the loose linkage and gearshift lever, this was a condition for which the defendant would be responsible. The plaintiff was an employee of an independent contractor who was on defendant's premises prosecuting work of the independent contractor for defendant, and the defendant landowner owed to plaintiff the duty which he owes to an invitee. The rule is stated in Bollman v. Kark Rendering Plant, Mo., 418 S.W.2d 39, 44, as follows:

"There can be no doubt that Senior, an independent contractor having Kark's permission to use its facilities, including the winch, was a business invitee of Kark to whom Kark, as owner-occupier, owed the duty to have its plant building and facilities in reasonably safe condition. This duty extends to the employees of an independent contractor who are on the premises prosecuting the work of the independent contractor. As to them the landowner owes a nondelegable duty to exercise ordinary care for their safety. Schneider v. Southwestern Bell Tel. Co., Mo.App., 354 S.W.2d 315, 318; McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo. Sup., 323 S.W.2d 788, 794; Ryan v. St. Louis Transit Co., 190 Mo. 621, 89 S.W. 865 [2 L.R.A.,N.S., 777]; Szofran v. Cen-

tury Electric Co., Mo.App., 255 S.W.2d 443. See Prosser on Torts, 2d Ed., 374, note 6. Note also 57 C.J.S. Master and Servant § 604, which attests to the liability of a contractee to the employees of an independent contractor for injuries resulting from an *unsafe appliance or instrumentality* furnished by the contractee."

See also Streicher v. Mercantile Trust Co., Mo., 31 S.W.2d 1065, 1068.

■ There was evidence that the defendant knew of the defective forklift truck and that plaintiff had no knowledge thereof. Under those circumstances, the defendant had a duty to remedy the condition so that its building and facilities were in reasonably safe condition or to warn plaintiff of the danger.

■ Defendant contends that when plaintiff has shown equal likelihood that his injury came from either one of two causes, and one is a cause for which defendant is not legally liable, plaintiff cannot recover. He cites Williams v. Cavender, Mo., 378 S.W.2d 537, and Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615. The basis of this contention by defendant is that it was equally probable that Kiefer, the operator of the truck, negligently left the truck in forward gear when he got off (for which defendant disclaims responsibility), and that this, rather than a defective linkage and gearshift lever, caused the truck to be in gear and to move forward and hit plaintiff. We do not agree. In the first place, there was no evidence whatsoever that the operator, Kiefer, knowingly or negligently left the truck in forward gear. Such a conclusion can result only from speculation or surmise merely because the truck moved forward. There was evidence, on the other hand, as to the loose condition of the linkage and gearshift lever and that the lever could erroneously register the gear in which the truck had been left by the operator. In addition, there was evidence that the truck had done this same thing on several prior occasions when the operator was not on the truck. This had been reported to the defendant and the truck taken to the defendant's shop for repair and maintenance by its mechanics. If the movement of the truck on these earlier occasions was due to negligence of the operator, and not to any defective condition, there would have been no occasion to report to defendant the faulty performance of the truck or to take it to the shop for inspection and repair. This is additional evidence that what occurred was due to defective performance of the truck rather than negligence on the part of the operator and, coupled with the testimony that the linkage and gearshift lever were in fact loose and might not correctly register the position of the gear, was sufficient to make a submissible case. The Williams v. Cavender and Waldron v. Skelly Oil Co. cases are inapplicable. Under the evidence, it was for the jury to determine whether the loose linkage and gearshift lever caused or contributed to cause plaintiff's injury. Defendant complains that the truck would not have moved if Kiefer had set the hand brake, but even if true, that would not prevent negligence of defendant in furnishing the defective truck from contributing to plaintiff's injury.

■ Defendant further asserts that a case was not made because there was insufficient evidence to show that the truck which struck plaintiff was in fact the same truck which had jumped forward on previous occasions. We find no merit in this contention. It is true that Robert Staples, when shown a photograph of Yale Forklift No. 13, stated merely that it looked like the truck with which he had worked and which had previously jumped forward, but plaintiff did not rely on that evidence alone. In response to interrogatories and to a request for admissions, defendant admitted that it owned Yale Forklift Truck No. 13 and that it had been operated by Thomas Kiefer approximately three weeks before the date on which plaintiff was injured. That was ample evidence to establish that all of the testimony in the case related to this one Forklift No. 13.

■■ Still another ground advanced by defendant as a basis for its contention that plaintiff did not make a submissible case is the assertion that there was no evidence to show that Thomas Kiefer was not on the forklift truck at the time it struck plaintiff. In this regard, the plaintiff relies on his own testimony that immediately after he was struck in the back, he looked around and Kiefer was off of the truck but was attempting to get back on. Defendant contends that this is no evidence that he was off the truck when it struck plaintiff. It relies on the rule which says that a presumption or inference of fact does not run backward, citing Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, and Nash v. Normandy State Bank, Mo., 201 S.W.2d 299. An examination of the facts of those two cases illustrates clearly that they are not applicable here. In Conduitt the court held that proof that a floor was wet in January of 1926 was not substantial evidence that the same condition obtained in August 1924, seventeen months earlier, when the accident occurred. In the Normandy State Bank case the question was whether an admission by a witness that he knew certain things in June was evidence that he knew the same facts on the preceding April 11. In each instance, the court applied the rule cited by the defendant. Those factual situations are not at all analogous. The time element is so close under the facts in this case that the position of Kiefer when plaintiff looked around, immediately after being hit, is evidence from which the jury could have found that Kiefer was not on the truck when it struck plaintiff. The rule stated in Conduitt and in Normandy State Bank is not applicable.

The next question raised by defendant is the sufficiency of plaintiff's verdict-directing Instruction No. 4. That instruction was as follows:

"Your verdict must be for the plaintiff if you believe:

"First, plaintiff was struck by defendant's fork lift when it suddenly and unintentionally moved into him at a time when the operator was not on or operating the fork lift, and

"Second, before plaintiff was struck the fork lift had on previous occasions suddenly and unintentionally moved when the operator was not on or operating it and as a result defendant's premises where it was being used when plaintiff was struck were not reasonably safe for workers there, and

"Third, before he was struck plaintiff did not know and by using ordinary care could not have known of the danger of this fork lift so moving, and

"Fourth, before plaintiff was struck defendant knew or by using ordinary care could have known of the danger of the fork lift so moving, and

"Fifth, defendant failed to use ordinary care to remedy this situation or warn plaintiff thereof and was thereby negligent, and

"Sixth, such negligence directly caused or directly contributed to cause damage to plaintiff."

This instruction was marked "Not in MAI" when tendered at the trial by plaintiff, but on appeal plaintiff asserts that it "submitted the issues of failing to remedy a dangerous condition and failing to warn plaintiff of it," and that "Instruction No. 4 is patterned upon those pertaining to owners and occupiers as set out in MAI Section 22." We agree with plaintiff that this case was submissible on the basis of an instruction drafted in accordance with Section 22 of MAI, but we find that the instruction did not do this correctly and is prejudicially erroneous.

Instruction No. 4 did not submit to the jury the issue of whether there was a defective condition in the forklift truck and whether such defect caused it not to be reasonably safe for persons working around it, such as employees of the independent contractor. It will be observed that the various instructions in Section 22 of MAI all do this. For example, in MAI 22.03 relating

to an invitee who is injured, the instruction submits whether there was a substance on the floor and whether as a result the floor was not reasonably safe for customers. MAI 22.04 and MAI 22.05 submit whether there was a crack or hole in the sidewalk or stairway and whether as a result they were not reasonably safe. In Terry v. Sweeney, Mo.App., 420 S.W.2d 368, cited and relied on by plaintiff, the instruction submitted the question of whether there was a roll-away bed in the backyard of the apartment which was dangerous to children by reason of the shearing effect of its metal parts when moved, and also the question of whether, as a result, the bed and the back-yard where the bed was kept were not reasonably safe. In Bollman v. Kark Rendering Plant, supra, also relied on by plaintiff, the verdict-directing instruction submitted the unguarded condition of the gears and working parts and whether this made the winch not reasonably safe for persons on the premises in furtherance of defendant's business.

■■ Instruction No. 4 submitted no such issue to the jury in this case. It did not submit in appropriate language the issue of whether the linkage between the control valve and gears and the gearshift handle was loose so that the shift lever would not properly register the gear in which the truck had been placed, nor whether that caused the truck to be not reasonably safe for employees of the independent contractor working around it. Instead, it simply required that the jury find that the truck suddenly and unintentionally moved when the operator was not on it. The submitted movement was not limited to that caused by loose linkage and gearshift lever which misled Kiefer. As submitted, it could have been caused by negligent conduct of the operator in knowingly or negligently leaving the truck in forward gear, but there was no evidence of such negligence on which to submit the case to the jury. Hence, while plaintiff's brief states that Instruction No. 4 submitted the issue of failing to remedy a dangerous condition or warn plaintiff of it, the instruction did not require a finding of the dangerous condition itself and that such dangerous condition made the premises not reasonably safe. This is a prerequisite of MAI verdict-directing instructions in suits against owners and occupiers of land. Consequently, the instruction was erroneous.

In view of this conclusion, it is unnecessary to review other assignments of error asserted by defendant as a basis for new trial. They refer to matters which may not recur on retrial.

Reversed and remanded.

All of the Judges concur.