**Phillip K. BURBRIDGE, Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY and Harsco Corporation, Respondents.**

No. ED 98719.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 24, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 19, 2013.

John T. Papa, Callis, Papa, Hale & Szewczyk, P.C., Granite City, IL, for Appellant.

Mary A. Mellow, Mark A. Prost, Timothy C. Sansone, Sandberg Phoenix & von Gontard P.C., St. Louis, MO, for Respondents.

KURT S. ODENWALD, Judge.

### Introduction

Phillip Burbridge ("Burbridge") appeals from the judgment of the trial court in favor of Union Pacific Railroad Company ("Union Pacific") and Harsco Corporation ("Harsco") (collectively, "Respondents"). Specifically, Burbridge asserts that the trial court erred in denying his motion for a

new trial because (1) the damages instruction given to the jury was misleading; (2) Respondents failed to present sufficient evidence to warrant submission of the mitigation of damages instruction; and (3) the jury's verdict in favor of Respondents was against the manifest weight of the evidence. We find that the trial court's submission of the damages instructions did not prejudice Burbridge. We further find that the verdict in favor of Respondents is not against the manifest weight of the evidence, and affirm the judgment of the trial court.

### Factual and Procedural History

The record, viewed in the light most favorable to the verdict, contains the following facts:

On February 15, 2006, Burbridge was working as a conductor for Union Pacific aboard a locomotive traveling from East St. Louis, Illinois, to Jefferson City, Missouri. As the locomotive passed through Pacific, Missouri, Burbridge saw smoke, flames, and dust coming from a Harsco rail grinder car on the adjacent track. Once his locomotive cleared the smoke and dust, Burbridge saw a beam extending from the rail grinder car and heading for the windshield of his locomotive. The beam collided with Burbridge's locomotive, shattering its windshield and causing glass and debris to fly into the cabin where Burbridge was working. Burbridge testified that glass from the shattered windshield struck him on his face and body and covered his clothing.

A few hours later, a manager from Union Pacific arrived at the scene of the accident. Burbridge told the manager that he felt a tingling sensation on his face and around his eyes. The manager drove Burbridge to an urgent care center in Washington, Missouri, where he was examined by Dr. Anne Elizabeth Mohart ("Dr. Mohart"), a certified emergency medicine physician. Burbridge told Dr. Mohart about the train accident and explained that he was concerned he may have glass fragments from the shattered windshield in his eyes. Burbridge complained of some pain and a tingling sensation on his face and in the corners of his eyes. Dr. Mohart stained Burbridge's eyes with fluorescein, which highlights any foreign bodies, defects, or scratches that may exist in the cornea. Dr. Mohart then examined Burbridge's eyes using a magnifying glass and an ultraviolet light and found no foreign bodies in Burbridge's eyes nor any other abnormalities or defects. Dr. Mohart further found that Burbridge had 20/20 uncorrected vision and did not place him on any work restrictions.

Following the accident, Burbridge took approximately seven days of vacation. Burbridge testified that he took vacation because the accident was a troubling experience, and he was frightened and unnerved by it. Burbridge then returned to work on February 24, 2006.

After returning to work, Burbridge continued to experience eye discomfort and sought treatment from numerous eye care physicians, including three optometrists (Dr. Erin Sullivan, Dr. Kathleen Doan, and Dr. Scott Tomasino) and one ophthalmologist (Dr. Mason Bias). Burbridge told each of these physicians about the train accident and explained that since the accident, he had experienced eye irritation and a foreign body sensation in his right eye. None of these physicians found any foreign bodies in Burbridge's eyes. None of these physicians told Burbridge that he suffered an eye injury as a result of the train accident. Drs. Doan, Tomasino, and Bias each diagnosed Burbridge with dry eye syndrome and told him he could safely return to work.

When Burbridge complained that his eye discomfort persisted, Union Pacific directed Burbridge to see Dr. Ranjan Malhotra, an ophthalmologist and corneal specialist. Burbridge saw Dr. Malhotra in September 2006, at which time Dr. Malhotra found no foreign bodies, abrasions, or abnormalities in Burbridge's cornea. Dr. Malhotra also diagnosed Burbridge with dry eye syndrome and told Burbridge he could return to work. In November 2006, Burbridge sought an additional opinion from Dr. Navin Amin, an ophthalmologist. Dr. Amin examined Burbridge's eyes and found no foreign bodies or abrasions. Like Dr. Malhotra, Dr. Amin diagnosed Burbridge with dry eye syndrome, and told Burbridge he could return to work.

In December 2006, Burbridge next sought the opinion of Dr. Bruce Cohen, another ophthalmologist. Following a thorough examination of Burbridge's eyes, Dr. Cohen made a primary diagnosis of moderately severe dry eye syndrome and prescribed Restasis to treat that condition. Dr. Cohen also diagnosed Burbridge with blepharitis, an eyelid condition that causes redness of the eyelids, irritation, itching, sensitivity to light and smoke, and blurry vision.

Burbridge next saw ophthalmologist and corneal specialist Dr. Anthony Lubinewski in July 2007. Dr. Lubinewski diagnosed Burbridge with dry eye syndrome and blepharitis. Dr. Lubinewski later testified by deposition that dry eye syndrome and blepharitis could both explain Burbridge's foreign body sensation, as that is a common symptom of both conditions. Dr. Lubinewski further testified that neither of those conditions is caused by trauma to the eye.

On February 13, 2009, Burbridge filed suit against Respondents alleging that Burbridge suffered damages as a result of the train accident. Count I of the petition was brought against Union Pacific pursuant to the Federal Employers' Liability Act ("FELA"). Count II was voluntarily dismissed and is irrelevant to this appeal. Count III alleged negligence against Harsco.

The court held a jury trial beginning on February 28, 2012. In an effort to expedite the trial, the parties agreed to submit the issues of negligence and agency to the trial court for determination. On February 29, 2012, the trial court entered an order finding Harsco negligent and that Harsco was acting as an agent of Union Pacific. The trial court then instructed the jury that the remaining issues left for the jury's determination "are whether the accident caused any injuries to Mr. Burbridge, and if so, what are the fair and reasonable damages that were caused by the accident."

At trial, Dr. Cohen testified that although his initial diagnoses for Burbridge's eye pain were dry eye syndrome and blepharitis, sometime around December 2009, he concluded that Burbridge's symptoms were also compatible with recurrent corneal erosion ("RCE") syndrome.[1] Dr. Cohen explained that RCE occurs when a patient has a deep initial abrasion and the surface cells on the eye do not properly heal. If the patient's eyes dry out in the middle of the night, those surface cells will attach to the eyelid, causing severe pain until the eye is lubricated with eye drops or medication. Dr. Cohen testified that Burbridge's long history of recurrent pain in a single eye, rather than both eyes, is consistent with RCE syndrome. Dr. Co-

1. For almost two years prior to filing suit, Burbridge had not seen any eye care physician regarding his eye pain. After filing suit, Burbridge resumed care with Dr. Cohen, who remains his primary treating physician for his eye conditions.

hen further testified that he believes Burbridge's right eye pain is related to the train accident.

Dr. Edward Holland, an ophthalmologist and corneal specialist, testified as an expert witness on behalf of Respondents. In preparation for his testimony, Dr. Holland interviewed and examined Burbridge for approximately 20 to 30 minutes. Based upon his physical examination of Burbridge and his review of Burbridge's medical records, Dr. Holland diagnosed Burbridge with dry eye syndrome and blepharitis, two conditions that, according to him, could not have been caused by the train accident. Dr. Holland also testified that Burbridge does not suffer from RCE syndrome. He explained that RCE syndrome requires an initial erosion or abrasion, which causes severe pain. Because Burbridge's initial complaint following the eye accident was pain in both eyes, rather than severe pain in just his right eye, Dr. Holland found no basis to diagnose Burbridge with RCE syndrome.

After the parties presented their evidence to the jury, an instruction conference was held. Burbridge objected to proposed Instruction 6, MAI 8.02, which pertains to calculating damages should the jury find in favor of Burbridge. Burbridge objected to this instruction on the ground that the language referencing future pecuniary damages was confusing and misleading. The trial court overruled Burbridge's objection, finding that it was compelled to use the approved MAI 8.02.[2] Burbridge also objected to proposed Instruction 10, MAI 32.07(A), the affirmative defense instruction for failure to mitigate damages in FELA cases. Burbridge argued the instruction should not be given because there was insufficient evidence to support tendering the affirmative defense instruction. The trial court also overruled Burbridge's objection to Instruction 10.

On March 2, 2012, the jury returned a verdict in favor of Respondents. Judgment upon the verdict was entered by the trial court on March 12, 2012. On April 10, 2012, Burbridge filed a motion for new trial, which was denied. This appeal follows.

### Points on Appeal

■ Although Burbridge presents only one point on appeal, his sole point consists of three separate arguments.[3] Burbridge first argues that the trial court erred in denying his motion for new trial because the damages instruction given to the jury, MAI 8.02, contained language referencing future pecuniary damages. Burbridge asserts that all future damages that could have been awarded by the jury would have been be non-pecuniary, and thus the instruction served only to mislead and confuse the jury. Burbridge next argues that the trial court erred in denying his motion for new trial because Respondents failed to present sufficient evidence to warrant the submission of MAI 32.07(A), the mitigation of damages instruction. Finally, Burbridge argues that the trial court erred in denying his motion for new trial because

---

2. MAI 8.02 has since been replaced by MAI 24.07 (2012 Revision).

3. We note that Burbridge's point on appeal does not conform to Rule 84.04. A point addressing multiple issues or structured so that it groups together contentions not related to a single issue is not concise and violates Rule 84.04. *Rogers v. Hester ex rel. Mills,* 334 S.W.3d 528, 536 (Mo.App.S.D.2010). Additionally, Burbridge failed to fully set forth the jury instructions he challenges in the argument section of his brief in violation of Rule 84.04(e). However, because we are able to ascertain the general principles of Burbridge's argument despite these deficiencies, we will review his claim *ex gratia,* addressing each argument in turn.

the jury's verdict in favor of Respondents was against the manifest weight of the evidence.

### Standard of Review

We note that Burbridge has appealed the trial court's denial of his motion for new trial. The denial of a motion for new trial is not appealable. *Yaeger v. Olympic Marine Co.*, 983 S.W.2d 173, 185 (Mo.App.E.D.1998) (citing *Hitt v. Martin,* 872 S.W.2d 121, 122 (Mo.App.E.D.1994)). However, in both *Yaeger* and *Hitt,* this Court proceeded with the appeal and applied the correct standard of review for an appeal from the judgment underlying the motion for new trial, rather than the denial of the motion for new trial. *See Yaeger,* 983 S.W.2d at 185; *Hitt,* 872 S.W.2d at 123. While Burbridge may not appeal the denial of his motion for new trial, we will treat his appeal as an appeal from the trial court's judgment, and will review it as such. *See also, Southard v. Southard,* 239 S.W.3d 172, 174 (Mo.App.E.D.2007).

### Discussion

**I. The trial court did not err in submitting the instructions on damages.**

A. *Instruction 6*

Burbridge first argues that the trial court erred in submitting Instruction 6, MAI 8.02. Instruction 6 was submitted to the jury as follows:

*If you find in favor of plaintiff,* then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained and is reasonably certain to sustain in the future as a result of the occurrence mention in the evidence. Any award of future pecuniary damages must be included at present value. Any award you make is not subject to income tax. If you find that

plaintiff failed to mitigate damages as submitted in Instruction Number 10, in determining plaintiff's total damages you must not include those damages that would not have occurred without such failure.

MAI. 8.02 (emphasis added). Burbridge asserts that because any damages the jury could have awarded would have been non-pecuniary, the language referencing pecuniary damages in Instruction 6 misled and confused the jury.

We first note that the use of instructions approved by the Missouri Supreme Court for use in FELA cases " 'is mandatory to the exclusion of all others.' " *Hedgecorth v. Union Pacific R.R. Co.*, 210 S.W.3d 220, 227–228 (Mo.App.E.D.2006) (quoting *Griffith v. St. Louis–San Francisco Ry. Co.*, 559 S.W.2d 278, 280 (Mo.App.E.D.1977) *cert. denied,* 436 U.S. 926, 98 S.Ct. 2821, 56 L.Ed.2d 769 (1978)). Thus, if MAI 8.02 is applicable, it must be given. *Id.*

The facts of this case support giving MAI 8.02. However, even if we were to find that submission of MAI 8.02 was not supported by the evidence, in order to reverse on grounds of instructional error, the party claiming instructional error must establish that the submitted instruction mislead or confused the jury and that prejudice resulted from the error. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 459 (Mo. banc 2006). No such prejudice could have occurred in this case because the jury did not reach Instruction 6 in rendering its verdict.

The purpose of MAI 8.02 is to direct the jury on how to properly calculate damages if the jury first finds in favor of the plaintiff. As clearly stated in the first sentence, MAI 8.02 applies only "If you [the jury] find in favor of plaintiff." In this case, the jury did not find in favor of the plaintiff, but rendered a verdict in favor of

Respondents. Following the plain language of the instruction, the jury had no reason to consider MAI 8.02, and, as a result, no opportunity to be confused or misled by the instruction. *See Smith v. Kovac,* 927 S.W.2d 493, 498 (Mo.App.E.D. 1996) ("In reviewing instructions, jurors should be credited with ordinary intelligence, common sense, and an average understanding of the English language."). Accordingly, the submission of Instruction 6 by the trial court could not have caused any prejudice to Burbridge.

B.   *Instruction 10*

■   Burbridge next argues that the trial court erred in submitting Instruction 10, MAI 32.07. The trial court submitted Instruction 10 as follows:

> *If you find in favor of plaintiff,* you must find that plaintiff failed to mitigate damages if you believe:
>
> First, plaintiff failed to return to work when capable of doing so following the accident, and
>
> Second, plaintiff thereby failed to use ordinary care, and
>
> Third, plaintiff thereby sustained damage which would not have occurred otherwise.

MAI 32.07 (emphasis added). Burbridge asserts that the trial court erred in submitting Instruction 10 because Respondents failed to offer sufficient evidence to warrant the tendering of the instruction. Burbridge further argues the instruction is misleading in that it suggests to the jury that a plaintiff's failure to mitigate damages is an absolute bar to recovery. Burbridge contends the misleading nature of the instruction could have contributed to the defense verdict.

The record contains sufficient evidence to support the trial court's submission of Instruction 10. During oral argument, counsel for Burbridge admitted as much.

As to Burbridge's claim that the instruction is misleading and could have contributed to the defense verdict, we note that, similar to Instruction 6, a jury will only consider Instruction 10, MAI 32.07, if the jury first finds in favor of the plaintiff. Here, the jury found in favor of Respondents, and therefore had no reason to consider or apply Instruction 10. Accordingly, even if the trial court erred in submitting Instruction 10, which it did not, there was no opportunity for the jury to have been misled by the instruction, and correspondingly, there could be no prejudice to Burbridge.

**II.   The verdict is not against the manifest weight of the evidence.**

Burbridge lastly argues that the verdict returned by the jury in favor of Respondents was against the manifest weight of the evidence because he presented substantial evidence at trial demonstrating that he suffered damages caused by the train accident. Burbridge first submits that the evidence showed he suffers from RCE syndrome, a condition that causes him to experience extreme pain, blurred vision, and a foreign body sensation in his right eye. Respondents' expert, Dr. Edward Holland, testified that he saw no evidence of RCE syndrome. Burbridge contends that the 20 to 30 minutes Dr. Holland interviewed and examined him was insufficient to provide an accurate medical history that would allow Dr. Holland to make an informed diagnosis. Burbridge counters that Dr. Cohen, his primary treating physician, is the only doctor with a sufficient patient history to accurately diagnose his condition. Dr. Cohen testified that Burbridge suffers from RCE syndrome, and that the condition is related to the train accident.

Burbridge also points to evidence showing that he suffered other immediate injuries, symptoms, and damages following the

accident that are unrelated to the issue of RCE syndrome. Burbridge testified that he experienced eye pain and a tingling sensation on his face immediately after the accident, symptoms he had not previously experienced. Burbridge further testified that he was struck in the face by shattered glass, and that the accident caused him to experience substantial fear, distress, and emotional harm. Finally, Burbridge asserts that he presented evidence that he used accrued vacation time and suffered lost wages as a result of the accident.

■■■ It is well established that questions as to the weight of the evidence are not the subject of appellate review. *Yaeger*, 983 S.W.2d at 185. "It is within the exclusive province of the trial court to determine if a jury's verdict is against the weight of the evidence. An appellate court will interfere with a jury verdict only if there is a complete absence of probative facts to support a jury verdict." *Id.*

■■■ Burbridge's recitation of evidence supporting his claim of injury and damage relates solely to the weight of the evidence and credibility of the witnesses, matters reserved to the discretion of the jury. Although Burbridge focuses on evidence supportive of his argument, we are not persuaded that the record contains a complete absence of probative facts to support the jury's verdict in favor of Respondents. To the contrary, the record contains substantial probative evidence from which a jury reasonably could conclude that Burbridge suffered no damages as a result of the train accident. Numerous physicians examined Burbridge and found no evidence of any foreign body, abrasion, or erosion in his eye. Additionally, Dr. Holland testified that Burbridge's eye conditions—dry eye syndrome and blepharitis—could not be caused by trauma to the eye, and therefore could not have been caused by glass striking Burbridge during the train acci-

dent. Although Dr. Cohen testified that Burbridge suffers from RCE syndrome, the jury was free to reject Dr. Cohen's opinion and instead adopt the opinions of the numerous other physicians who found no evidence of RCE syndrome. *See Buckner v. Pillsbury Co.*, 661 S.W.2d 626, 627 (Mo.App.E.D.1983) ("The jury remains free to disbelieve the testimony of any one or all witnesses, even if the evidence is uncontradicted and unimpeached."); *see also Yaeger*, 983 S.W.2d at 185. The jury was also free to believe that Burbridge was not struck by glass particles as he crouched behind his co-worker's chair at the time of impact, and to disbelieve Burbridge's testimony regarding his physical symptoms, emotional distress, and reasons for not working. *See Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 105 (Mo. banc 2010) ("The jury is the sole judge of the credibility of witnesses...."). Because the evidence in the record includes probative facts which support the jury's verdict, the trial court did not err in entering judgment upon the verdict in favor of Respondents.

Point denied.

### Conclusion

Because the jury returned a verdict in favor of Respondents, the trial court's submission of Instructions 6 and 10 are not at issue and did not result in any prejudice since each instruction instructed the jury on the law relating to damages only if the jury first found in favor of plaintiff. Because the jury's verdict is not against the manifest weight of the evidence, we find no error and affirm the judgment of the trial court.

MARY K. HOFF, P.J., and ANGELA T. QUIGLESS J., concur.