

# In the
# Missouri Court of Appeals
## Western District

STEVEN KEY AND CHRISTINE KEY,

      **Respondents,**

v.

**DIAMOND INTERNATIONAL TRUCKS F/K/A KCR INTERNATIONAL TRUCKS,**

      **Appellant.**

**WD77323**

**OPINION FILED:**

**January 27, 2015**

---

**Appeal from the Circuit Court of Buchanan County, Missouri
The Honorable Weldon Clare Judah, Judge**

**Before Division Four: Alok Ahuja, C.J. Presiding,
James Edward Welsh, J., and Patrick Campbell, Sp. J.**

Diamond International Trucks, formerly known as KCR International Trucks, Inc.,
appeals from the judgment entered by the circuit court following a jury verdict of $10,000,000 in
damages on Steven Key's negligence claim for personal injuries but assessing 35 percent fault to
Diamond International and 65 percent fault to Key. Diamond International asserts that the circuit
court: (1) erred in denying its motion for new trial because the circuit court erroneously and
prejudicially rejected Diamond International's comparative fault instruction and gave an
alternative comparative fault instruction, (2) erred in denying its motion for judgment
notwithstanding the verdict on Key's negligence claims because Diamond International owed no

duty to provide Key with the equipment needed to perform his work safely, and (3) erred and abused its discretion in denying Diamond International's motion for new trial because the circuit court erroneously and prejudicially excluded evidence of subsequent remedial measures taken by Key's employer.  We affirm.

Viewing the evidence in the light most favorable to the verdict, the evidence established that Key was employed by Auto Truck Transport (ATT), and, as part of his employment, Key delivered heavy duty commercial trucks to dealerships.  The trucks are transported by ATT in a piggyback or decked fashion, which means that two or three trailing trucks are attached to a lead truck at an angle with only their rear wheels on the ground.  The trucks are decked by ATT using special saddles made of steel and wooden blocks that are bolted to the truck chassis and held in place by the weight of the trucks.

On December 6, 2007, Key delivered three trucks from Texas to Diamond International's St. Joseph, Missouri, dealership.  When Key arrived at Diamond International's dealership, he pulled the trucks into an area that Diamond International provided for undecking the trucks.  In the undecking facility, Diamond International provided a hoist to be used in the undecking process.

To undeck the trucks, straps are used to attach a truck to the hoist.  The trucks have hooks in the front bumpers which are used to attach the straps to the hoist.  Once the straps are secured to the hoist, the straps help to limit the vertical movement of the top truck, and the hoist lifts the top truck off the next lower truck.  Attached to the trucks are U-bolts and a J-bolt.  U-bolts hold the saddle onto the top truck, and a J-bolt holds hold the two saddles together.

When Key was undecking the trucks at Diamond International, he attempted to use two straps to attach the truck to the hoist but said he was unable to do so because of the height

2

differential between the hoist and the top truck. Key, therefore, used one strap. He hooked one end of the strap to one side of the bumper, put the strap through the hoist, hooked the other end of the strap to the other hook on the bumper, and lifted the truck. After lifting the truck, Key got wooden chocks or blocks out of the "container" or "bin" and "kicked them behind the wheels and underneath the front of the wheels" of the truck. Key then went to the driver's side of the truck and took off one U-bolt. Key was attempting to remove another U-bolt from the top truck, when the top truck rolled back and trapped Key between the two trucks.

Key suffered multiple injuries including bilateral chest trauma, hemothoraces, flail chest, multiple rib fractures, pulmonary contusion, respiratory failure, pneumonia, hemoperitoneum, internal bleeding, avulsion, renal injuries, injuries to the lumbar arteries, injuries to the mesenteric arteries, damage to the mesentery, a devascularized small bowel, an infarcated colon, pelvic hematoma, injury to the pelvis, transverse process fractures, and acute renal failure. As a result of his injuries, Key was left impotent. He also suffers from impaired bowel function, gait impairment which requires the use of a cane, deep vein thrombosis, weakness in his muscles, bladder issues, and back pain. In the future, Key will need rehabilitative services, physical therapy, medications, and ongoing consultations with urology and gastroenterology.

Key[1] sued Diamond International alleging that Diamond International negligently supplied a dangerous instrumentality for a business purpose by not providing Key proper wheel

---

[1]Key's wife, Christine Key, also sued for the damages she sustained as a direct result of the injury to her husband. The jury found that Christine Key did sustain damages as a direct result of her husband's injury, but the jury found that the amount of Christine Key's damages was zero.

chocks to stabilize the trucks during the undecking process.[2] After a trial, the cause was

submitted to the jury upon comparative fault instructions. Instruction Number 8 said:

> In your verdict you must assess a percentage of fault to defendant Diamond International Trucks whether or not plaintiff Steve Key was partly at fault, if you believe:
>
>> First, defendant supplied an un-decking facility for use, and
>>
>> Second the un-decking facility lacked proper wheel chocks and was therefore dangerous when put to a reasonable expected use, and
>>
>> Third, the un-decking facility was put to a reasonably expected use, and
>>
>> Fourth, defendant knew or in the exercise of ordinary care could have known of such dangerous condition, and
>>
>> Fifth, defendant failed to exercise ordinary care to make the condition reasonably safe, and
>>
>> Sixth, such failure either directly caused damage or combined with the failure of Auto Truck Transport to directly cause damage to plaintiff.

Instruction Number 9 said:

> In your verdict you must assess a percentage of fault to plaintiff Steve Key, whether or not defendant was partly at fault, if you believe:

First either:

> plaintiff Steve Key failed to use any straps to undeck the subject truck, or
>
> plaintiff Steve Key knew or by using ordinary care could have known that there was a reasonable likelihood of injury during the undecking procedure if he failed to use two straps in the undecking procedure, if feasible, or

---

[2]In his first amended petition for damages, besides his wife's claims for damages, Key asserted four different claims against Diamond International: (1) dangerous condition on property, (2) negligently supplying a dangerous instrumentality, (3) negligently supplying a dangerous instrumentality for suppliers' business purpose, and (4) strict liability. The only claim submitted to the jury was Key's claim for negligently supplying a dangerous instrumentality for suppliers' business purpose.

4

plaintiff Steve Key knew or by using ordinary care could have known that there was a reasonable likelihood of injury during the undecking procedure if he failed to disconnect the saddles by the J-bolts, and

Second, plaintiff Steve Key, in any one or more of the respects submitted in Paragraph First, was thereby negligent,[3] and

Third, such negligence of plaintiff Steve Key directly cause or directly contributed to cause any damage plaintiff Steve Key may have sustained.

The jury was also instructed to determine the total amount of Key's damages on his claim for personal injury and instructed that, in making such determination, it should disregard any fault it assessed against Key. The jury returned a verdict of $10,000,000 in damages on Key's claim for personal injuries but assessed 35 percent fault to Diamond International and 65 percent fault to Key. Consistent with the jury's verdict, the circuit court entered judgment in favor of Key and against Diamond International in the amount of $3,500,000. Thereafter, Diamond International filed its motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial and motion for remittitur. The circuit court denied Diamond International's post-trial motions. Diamond International timely filed its notice of appeal with this court on February 28, 2014.

In its first point on appeal, Diamond International asserts that the circuit court erred in denying its motion for new trial because the circuit court erroneously and prejudicially rejected Diamond International's comparative fault instruction and instead gave the jury Key's comparative fault instruction, Instruction Number 9. Diamond International contends that Instruction Number 9 improperly deviated from the Missouri Approved Instructions, misstated

_____

[3]Instruction Number 7 defined "negligent" or "negligence" as "the failure to use that degree of care than an ordinarily careful person would use under the same or similar circumstances."

5

Diamond International's burden of proof, and failed to submit the specific acts of comparative fault to the jury.

Initially, we note that the denial of a motion for new trial is not an appealable order. "No appeal lies from an order overruling a motion for a new trial, but the aggrieved party may appeal from a final judgment entered against him." *Walker v. Thompson*, 338 S.W.2d 114, 116 (Mo. 1960); *Burbridge v. Union Pacific R.R. Co.*, 413 S.W.3d 649, 654 (Mo. App. 2013). In its notice of appeal, Diamond International states that it is appealing from "the Judgment entered in this action on November 26, 2013, and the Order denying post-judgment relief entered on February 21, 2014." We therefore assume that Diamond International's appeal was from the judgment entered by the circuit court.

Diamond International contends that the circuit court erred in rejecting its comparative fault Instruction A, which provided:

> In your verdict you must assess a percentage of fault to plaintiff Steve Key, whether or not defendant was partly at fault, if you believe:
>
> First, either:
>
> > plaintiff Steve Key failed to use any straps to undeck the subject truck, or
> >
> > plaintiff Steve Key failed to use two straps to undeck the subject truck, if feasible, or
> >
> > plaintiff Steve Key failed to disconnect the saddles by the J-bolts, and
>
> Second, plaintiff Steve Key, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and
>
> Third, such negligence of plaintiff Steve Key, directly caused to directly contributed to cause any damage plaintiff Steve Key may have sustained.

6

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances *by an expert in plaintiff Steve Key's business*.[4]

The circuit court, however, properly rejected the instruction because it used an improper definition of negligence. The instruction that Diamond International submitted used the definition of negligence from MAI 11.10, which is entitled "Negligence--Ordinary Care--Manufacturers of Certain Product." MAI 11.10 is used in cases involving drug manufacturers or in cases involving "the sophisticated nature of the engineering, dynamics, and production" of items such as helicopter engines. *Barnett v. La Societe Anonyme Turbomeca France*, 963 S.W.2d 639, 652 (Mo. App. 1997), *overruled on other grounds Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013). As such, it was not the proper definition to be used in this case. The proper definition of negligence for this case is the definition provided in MAI 11.07 and is the definition that was given to the jury in Instruction Number 7.[5] Thus, it was proper for the circuit court to refuse to give Diamond International's Instruction A.

Diamond International contends, however, that the instruction given to the jury, i.e. Instruction Number 9, improperly deviated from the Missouri Approved Instructions, misstated Diamond International's burden of proof, and failed to submit the specific acts of comparative fault to the jury. Although Diamond International contends that Instruction Number 9 was

---

[4]We added the emphasis.

[5]*See supra*, note 3.

7

tendered by Key, the record proves otherwise.[6]

> When Diamond International offered Instruction A, Key objected on these grounds:
>
> I object to . . . the second and third alternative submissions under paragraph first, because they fail to hypothecate Steve Key's knowledge that the undertaking of those events would cause injury. I actually don't believe there's evidentiary support that they would have caused injury. But at a minimum, I think they have to hypothesize that under the cases[.]

Diamond International responded:

> [I]s their evidence that plaintiff knew that two straps were safer[?] He said he was trained with one, but two was safer. He took two straps out there, so the evidence supports it. Also, from the saddle he testified that it could shift around and u-bolts would cause the truck to shift, and he acknowledged that a j-bolt is a device that allows the saddle to sit within itself so it doesn't shift, and that's a safer way to do it.

The circuit court sustained Key's objection to Instruction A and marked it as refused. The circuit court then noted: "There's a secondary offer by counsel for defendant [and] also comparative fault verdict director from the defendants." The court asked Key's attorney if he had any objection to that submission, and Key's attorney said that he did not. Key's attorney then stated: "And it's my understanding of this, just so we have it in the record, that the instruction I have proposed, they changed the second submission under paragraph first to use the word "feasible," and I do no object to that language change." The record, therefore, established that Instruction

---

[6]In its reply brief, Diamond International asserts that the circuit court held an "informal instruction conference" after the close of the evidence and that at the informal instruction conference it offered its proposed comparative fault instruction, to which Key objected. Diamond International contends that Key then submitted Instruction Number 9 as an alternative, and the circuit court said that it would give Key's proposed alternative with slight modifications. Diamond International claims that, "as a courtesy to [Key's] counsel," it retyped Key's alternative instruction that evening. None of this, however, was on the record.

8

Number 9 was offered by Diamond International.[7] Diamond International cannot complain on appeal about an instruction which they offered. [8] *Anglim v. Mo. Pacific R.R. Co.*, 832 S.W.2d 298, 308 (Mo. banc 1992); *Lush v. Woods*, 978 S.W.2d 521, 524 (Mo. App. 1998).

But, even if the instruction was offered by Key, Diamond International had "a duty to object to the instruction before it was submitted to the jury." *Lush*, 978 S.W.2d at 524. Rule 70.03 instructs: "Counsel shall make specific objections to instructions considered erroneous." Moreover, "[N]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Rule 70.03. Diamond International never objected to Instruction Number 9 on the grounds that it improperly deviated from the Missouri Approved Instructions, misstated Diamond International's burden of proof, and failed to submit the specific acts of comparative fault to the jury. "'Timely objections [to an instruction] are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial.'" *Howard v. City of Kansas City*, 332 S.W.3d 772, 790 (Mo. banc 2011) (citation omitted). Thus, because Diamond International did not object to the instruction before it was submitted to the jury, Diamond International did not preserve for our review his complaints that the instruction deviated from the Missouri Approved Instructions,

---

[7]Later in the instruction conference the circuit court did state: "[T]he Court following the instruction conference will give the following instructions, all of which have been offered by plaintiff except as hereafter specifically noted." The parties then had a discussion about a copy of one of the instructions, and the court took a recess. The court never listed the instructions that it was giving before it took the recess. After the recess, the Court listed the instructions it would give, but did not mention anything about what party offered the instructions.

[8]In finding that Diamond International cannot complain about an instruction that it offered, we are by no means sanctioning the use of this instruction in future comparative fault cases.

9

misstated the burden of proof, and failed to submit the specific acts of comparative fault to the jury.

In its second point on appeal, Diamond International asserts that the circuit court erred in denying its motion for judgment notwithstanding the verdict on Key's negligence claims because Diamond International owed no duty to provide Key with the equipment needed to perform his work safely. In particular, Diamond International contends that it had no duty to provide wheel chocks for Key because Key was an employee of an independent contractor doing his employer's work on Diamond International's premises and Diamond International exercised no control over the means of doing that work. This issue was not contained in Diamond International's motion for directed verdict presented to the circuit court at the close of all the evidence.

"Because a judgment notwithstanding the verdict is a motion to have judgment entered in accordance with a motion for directed verdict, 'a sufficient motion for a directed verdict is required to preserve the motion for judgment notwithstanding the verdict and for appeal.'" *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 43-44 n. 21 (Mo. App. 2013) (citation omitted). Rule 72.01(a) requires that a motion for directed verdict "state the specific grounds therefore." "A party cannot save an insufficient motion for directed verdict by making specific allegations in the motion for JNOV." *Merseal v. Farm Bureau Town & Country Ins. Co. of Mo.,* 396 S.W.3d 467, 471 (Mo. App. 2013). "'[I]ssues not raised in a motion for directed verdict, but raised in the motion for JNOV, are not preserved for appellate review of the motion for JNOV." *Wagner v. Mortg. Info. Servs., Inc.*, 261 S.W.3d 625, 639 n.13 (Mo. App. 2008) (citation omitted). Thus, because Diamond International's failed to raise in its motion for directed verdict that it had no duty to provide wheel chocks for Key because Key was an employee of an independent contractor, it was precluded "'from obtaining a judgment notwithstanding the verdict in its favor

10

on these grounds'" and is further precluded "'from obtaining appellate review of the trial court's failure to enter judgment notwithstanding the verdict on these grounds.'" *Delacroix*, 407 S.W.3d at 44 n. 21 (citation omitted).

But, even if Diamond International had preserved the issue for our review, Diamond International would not prevail. "The premises liability theory of negligence provides that a landowner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee as the result of a dangerous condition existing on the premises." *Cossey v. Air Sys. Int'l, Inc.*, 273 S.W.3d 588, 590 (Mo. App. 2009). "Under the independent contractor exception to premises liability, if a landowner relinquishes possession and control of its property to an independent contractor during the period of work, the duty of care shifts to the independent contractor." *Id.* "The independent contractor exception," however, applies exclusively to premises liability theories of negligence[.]" *Id.* at 590-91. Moreover, "[t]he law concerning landowner liability is that the duty of due care shifts to the independent contractor during the period of construction if the landowner relinquishes possession and control of the *premises* to the independent contractor, not the *specific instrumentality*." *Johnson v. Jadico, Inc.*, 155 S.W.3d 99, 102 (Mo. App. 2005) (emphasis in the original). Indeed, independent contractors having permission to use a landowner's facilities are business invitees of the landowner to whom the landowner owes a duty to have its facilities in a reasonably safe condition. *Enloe v. Pittsburgh Plate Glass Co.*, 427 S.W.2d 519, 522 (Mo. 1968); *Bollman v. Kark Rendering Plant*, 418 S.W.2d 39, 44 (Mo. 1967). "'This duty extends to the employees of an independent contractor who are on the premises prosecuting the work of the independent contractor. As to them the landowner owes a nondelegable duty to exercise ordinary care for their safety.'" *Enloe*, 427 S.W.2d at 522 (quoting *Bollman*, 418 S.W.2d at 44). Moreover, a landowner is liable to

11

employees of an independent contractor "'for injuries resulting from an *unsafe appliance or instrumentality*'" furnished by the landowner. *Enloe*, 427 S.W.2d at 522 (quoting *Bollman*, 418 S.W.2d at 44) (emphasis in the original).

In this case, Key submitted his case on the theory that Diamond International negligently supplied Key a dangerous instrumentality for a suppliers' business purpose. Key did not submit his case to the jury on a theory of premise liability. Thus, the "independent contractor exception" that Diamond International raises on appeal is not applicable. The circuit court, therefore, did not err in denying Diamond International's motion for judgment notwithstanding the verdict.

In its third and final point, Diamond International contends that the circuit court erred and abused its discretion in denying Diamond International's motion for new trial because the circuit court erroneously and prejudicially excluded evidence of subsequent remedial measures taken by Key's employer. In particular, Diamond International wanted to present the testimony of Vince Pettijohn, who would testify that, almost six years after Key's accident, a man named Leonard, who worked for a company hired by ATT, delivered triangular wooden chocks to Diamond International's premises for drivers of ATT to use.

As noted previously, the denial of a motion for new trial is not an appealable order, but an aggrieved party may appeal from a final judgment entered against him. *Walker*, 338 S.W.2d at 116; *Burbridge,* 413 S.W.3d at 654. We assume that Diamond International's appeal was from the judgment entered by the circuit court.

The circuit court has broad discretion in deciding whether to admit or to exclude evidence at trial. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). "Our standard for reviewing the circuit court's exclusion of evidence is not whether the evidence was admissible, but whether the circuit court abused its broad discretion in excluding it." *Terry*

12

*v. Mossie*, 59 S.W.3d 611, 613 (Mo. App. 2001). An abuse of discretion occurs when the circuit court's ruling "'is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Secrist v. Treadstone, LLC*, 356 S.W.3d 276, 280 (Mo. App. 2011) (citation omitted).

Diamond International filed a motion in limine advocating the admissibility of subsequent remedial actions, and the circuit denied the motion in limine. At trial, Diamond International made this offer of proof regarding Pettijohn's proposed testimony:

> And then the other offer of proof I have to make is what I've marked as Defendant's Exhibit 9, which shows the triangular wooden chocks. Mr. Vince Pettijohn will testify that after the accident . . . he was there at the facility, Diamond/KCR facilities, because he's the manager. And a gentleman named Leonard, who works for a company hired by Auto Truck Transport, delivers these wooden triangular chocks for the Auto Truck Transport drivers. . . . This is after the accident. . . . It would have been two months ago.

Key objected stating that the offer of proof was irrelevant and non-specific. Key argued, "Leonard from a delivery company that works for Auto Truck. He's not going to offer any testimony about what he did today; right?" Diamond International's attorney replied:

> That he's hired by Auto Truck Transport. Well, it depends on what comes in, but he's going to say that these were dropped off by Auto Truck Transport's company they hire, and those are the chocks they put there after the accident.
>
> It shows control. It shows feasibility to provide those types of chocks for their drivers. And, also, there's not public policy reason as there typically is when you have a party who's doing subsequent remedial measures. This is a non-party. This is exactly what Auto Truck Transport does for its employees. They're the ones providing chocks.

Key's attorney responded: "I would say subsequent remedial repair, relevance, and lack of adequate foundation to tie that on the basis of Pettijohn's testimony through Leonard back to

13

Auto Truck is like--that would only be a double hearsay." Diamond International's attorney replied, "Well, it depends on how it comes in."

At the conclusion of the offer of proof, the circuit court said that it would stand by its earlier motion in limine ruling and stated:

> It's so remote in time as to be completely valueless to the jury in its determination as to whether or not [Diamond International was] liable back in December of 2007. I'm afraid it's just a collateral issue, and I think it's--the down side that I can see of the jury making use of something like this exceeds any real benefit that I can see to the defendant. . . . I think we're just opening up a door here that's--I think that's why they say it's irrelevant, and that's--I'm going to go ahead, as we ruled in limine, I'm going to go ahead and continue to decline to admit that into evidence. You made your offer of proof, but that inquiry may not be made.

"'Normally, an appellate court will not review evidence excluded by the [circuit] court unless a *specific* and *definite* offer of proof was made at trial[.]'" *Terry*, 59 S.W.3d at 612 (emphasis in the original and citation omitted). "An offer of proof must specifically show: (1) what the proffered evidence would be; (2) its object and purpose; and (3) all the facts necessary to establish its relevance and admissibility." *Calzaretta v. Willard*, 391 S.W.3d 488, 493 (Mo. App. 2013). "The preferable way to make an offer of proof is by asking the proposed witness questions outside of the jury's presence, but narrative offers of proof are occasionally found to be adequate." *Terry*, 59 S.W.3d at 612 (emphasis omitted). "While offers of proof may be adequate if given in narrative form, they must be sufficient to allow the court to make an informed ruling." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 766 (Mo. banc 2011). "The offer must be more than a 'mere statement of the conclusions of counsel.'" *Terry*, 59 S.W.3d at 613 (citation omitted). "Because making an effective narrative offer of proof is difficult, 'counsel . . . runs a greater risk that the court will find the offer insufficient.'" *Id.* (quoting *State v. Townsend*, 737 S.W.2d 191, 192 (Mo. banc 1987)).

14

Diamond International's offer of proof was not specific and definite. The offer of proof did not state how Pettijohn knew that Leonard worked for a company hired by ATT and did not state how Pettijohn knew that Leonard delivered the chocks at ATT's request. Nothing was included in the offer of proof showing the motivating purpose or reason that the wheel chocks were delivered to Diamond International's facility. When Key objected to the offer of proof on the grounds that the offer lacked specificity, lacked a sufficient foundation, lacked relevance, and was double hearsay, Diamond International did not provide additional specifics but merely responded with "it depends on how it comes in."

Although the record seemingly establishes that the circuit court requested that Diamond International proceed in narrative form on its offer of proof as opposed to questioning the witness, Diamond International still had to include specific facts in its narrative to allow the parties and the circuit court to understand what the proffered testimony would be with enough certainty to determine that the evidence is relevant, material, and probative. *School Dist. of City of Indep., Mo., No. 30 v. U.S. Gypsum Co.*, 750 S.W.2d 442, 453 (Mo. App. 1988). The circuit court's mere suggestion that Diamond International proceed with a narrative offer of proof does not relieve Diamond International of its obligation to be specific and definite in its narrative and does not preserve an otherwise deficient offer of proof for appeal. The circuit court, therefore, did not abuse its discretion in excluding Diamond International's evidence of subsequent remedial measures taken by Key's employer and in denying its motion for new trial.

We affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

15