

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| AMY REVIS, | ) | No. ED107663 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Joseph S. Dueker |
| DONALD BASSMAN, M.D., | ) | |
| | ) | |
| Respondent. | ) | Filed: March 3, 2020 |

## Introduction

Amy Revis ("Revis") appeals the trial court's judgment following a jury verdict in favor of Donald Bassman, M.D. ("Dr. Bassman") in her medical malpractice action. Revis presents four points on appeal, the first three points challenging the trial court's evidentiary rulings concerning Dr. Bassman's expert witness (1) precluding cross-examination into the witness's tort reform activities, (2) admitting unreliable causation testimony, and (3) excluding an online medical database exhibit. In her last point, Revis contends that the verdict was against the weight of the evidence. The trial court did not err when it admitted medical expert testimony that met sufficient reliability criteria under Section 490.065[1] and excluded the medical database exhibit for lack of foundation. Further, Revis does not meet her burden in arguing that the verdict was against the weight of the evidence. However, the trial court did not reasonably exercise its discretion when it

---

[1] All Section references are to RSMo (Cum. Supp. 2018) unless otherwise indicated.

excluded testimony of the expert witness's tort reform activities. Accordingly, we reverse the judgment of the trial court and remand for a new trial.

Factual and Procedural History

Revis fell about three to four feet from a ladder and landed on her right foot. Revis went to the hospital by ambulance and was admitted at 1:07 p.m. on January 29, 2013. The emergency room physician determined Revis fractured her ankle and calcaneus (heel bone). The emergency room physician called Dr. Bassman, the on-call orthopedist. Dr. Bassman indicated Revis needed surgery and contacted the operating room the next morning to schedule the surgery. The first available time for the surgery was approximately 5:00 p.m. At that time, Dr. Bassman performed surgery to repair Revis's fractures by placing several screws.

The back of Revis's heel did not heal after surgery. Specifically, the back of the skin of Revis's heel suffered necrosis, also known as tissue death. Revis required additional treatment and surgeries to heal the wound area, including skin grafts to the back of her heel.

In 2015, Revis filed a medical malpractice action alleging that Dr. Bassman committed medical malpractice by delaying surgery on her heel, thereby causing the tissue necrosis.

At trial, which began on December 10, 2018, Dr. Bassman testified on his own behalf. Both parties also presented medical expert testimony. Revis retained Dr. James Turner Vosseler ("Dr. Vosseler"), who testified that Dr. Bassman breached the standard of care by waiting too long to perform surgery. Dr. Vosseler opined that the delay caused blood flow disruption and necrosis because a bone fragment in the heel exerted pressure on the skin until surgery was performed. Dr. Bassman retained Dr. Brett Grebing ("Dr. Grebing"), who testified the necrosis was caused by the forceful trauma of Revis's fall resulting in a piece of the calcaneal bone pulling off and moving through the tissue, not the timing of Revis's surgery. The trial court admitted Dr. Grebing's

2

causation testimony over Revis's motion in limine and in-trial objections that the testimony failed to meet the evidentiary standard of reliability.

Revis sought to cross-examine Dr. Grebing about his conduct and involvement in past tort reform activities to show bias, interest, and prejudice against plaintiffs in medical malpractice actions. Revis submitted an offer of proof relating to Dr. Grebing's activities while he was president of a medical society. Dr. Grebing's alleged conduct included writing to legislators advocating for the enforcement of existing statutes of limitations for certificates of merit filed in medical malpractice claims as well as for statutory caps on damage awards as both a member of the medical society and as a medical professional. Revis's offer of proof revealed Dr. Grebing would have denied he engaged in tort reform activities while he was president of his local medical society, despite the fact he testified in an earlier deposition it was "fair to say" he engaged in tort reform activities in his role as president. The trial court precluded that evidence. Additionally, Revis sought to cross-examine Dr. Grebing using Up-To-Date, an online medical database that the hospital made available to its physicians. Dr. Bassman objected to the printed database exhibit ("Exhibit 166") for lack of foundation, and the trial court sustained the objection.

At the conclusion of the trial, the jury reached a verdict in favor of Dr. Bassman. Revis filed a motion for new trial, alleging the same claims of evidentiary error she raises on appeal and also that the verdict was against the weight of the evidence. The trial court denied the motion. Revis now appeals.

Points on Appeal

Revis raises four points on appeal. Point One maintains the trial court erred by not allowing cross-examination into Dr. Grebing's tort reform activities. Point Two posits the trial court erred in admitting Dr. Grebing's causation testimony for lack of reliable medical or scientific support.

3

Point Three claims the trial court erred in excluding Exhibit 166. Point Four contends the trial court erred in not ordering a new trial because the verdict was against the weight of the evidence.

## Standard of Review

"A trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." Koelling v. Mercy Hosps. E. Cmtys., 558 S.W.3d 543, 550 (Mo. App. E.D. 2018) (internal quotation omitted); see also Jones v. City of Kansas City, 569 S.W.3d 42, 53 (Mo. App. W.D. 2019) (reviewing a trial court's ruling on expert witness testimony for an abuse of discretion); Embree v. Norfolk & W. Ry. Co., 907 S.W.2d 319, 325 (Mo. App. E.D. 1995) (internal citation omitted) (noting "[t]he scope and extent of cross-examination in a civil trial is determined at the discretion of the trial court"). We will find an abuse of discretion only when the trial court's ruling is "clearly against the logic of the circumstances then before the trial court and . . . so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." Jones, 569 S.W.3d at 53 (internal quotation omitted). "If a decision of the trial court on the admission or exclusion of evidence is correct for any reason it will be affirmed." Bella v. Turner, 30 S.W.3d 892, 897 (Mo. App. S.D. 2000). To prevail on appeal under the abuse-of-discretion standard, an appellant must demonstrate both that the trial court erred and that the error prejudiced the outcome of the verdict. Coyle v. City of St. Louis, 408 S.W.3d 281, 290 (Mo. App. E.D. 2013) (internal citation omitted); see also Jones, 569 S.W.3d at 53.

In addition, a trial court "has nearly unfettered discretion in deciding whether or not to grant a new trial on the ground that the verdict was against the weight of the evidence, '[a]nd its ruling upon that ground will not be disturbed, except in case of manifest abuse.'" Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. banc 2006) (internal quotation omitted).

4

Any questions of statutory interpretation will be reviewed de novo. Kivland v. Columbia Orthopaedic Grp., LLP, 331 S.W.3d 299, 311 (Mo. banc 2011) (internal citation omitted).

Discussion

## I.        Rule 84.04—Points on Appeal

Dr. Bassman maintains Revis's appeal should be dismissed for failure to comply with the rules of appellate procedure. See Rule 84.04.[2] Specifically, Dr. Bassman alleges the points relied on fail to identify the legal reason for finding reversible error or explain why those legal reasons support a claim of reversible error in this case.

Rule 84.04 sets forth mandatory requirements for appellate briefs. King v. King, 548 S.W.3d 440, 442 (Mo. App. E.D. 2018) (internal citation omitted). Each point relied on must: "(A) [i]dentify the trial court ruling or action that the appellant challenges; (B) [s]tate concisely the legal reasons for the appellant's claim of reversible error; and (C) [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1). Rule 84.04(d)(1) further provides that "[t]he point shall be in substantially the following form: 'The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].'" Id. (brackets in original).

The points relied on are intended "to provide the respondent with notice of the precise matter which must be answered and to inform the court of the issues presented." King, 548 S.W.3d at 443. "The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." Jones v. Buck, 400 S.W.3d 911, 915 (Mo. App. S.D. 2013) (internal quotation omitted). Rather,

---

[2] All Rule references are to Mo. R. Civ. P. (2018).

"[c]ompliance with the requirements is necessary to ensure we do not become an advocate by inferring facts and arguments an appellant fails to set forth." King, 548 S.W.3d at 442. Consequently, a point on appeal that identifies no legal basis for concluding that the actions of the trial court amounted to reversible error preserves nothing for review. Estate of Hanks, 589 S.W.3d 604, 606 (Mo. App. E.D. 2019) (citing Washington v. Blackburn, 286 S.W.3d 818, 821 (Mo. App. E.D. 2009)); see also Schnurbusch v. W. Plains Reg'l Animal Shelter, 571 S.W.3d 191, 196 (Mo. App. S.D. 2019) (internal citations omitted); King, 548 S.W.3d at 442 (internal citation omitted) ("The failure to, at least substantially, comply with Rule 84.04 preserves nothing for our review and is grounds for dismissal.").

Here, Revis's points relied on state the following: "Barring Cross-Examination of Dr. Grebing's Personal Tort Reform Efforts Constitutes Prejudicial Error Requiring a New Trial" (Point One); "It Was Error To Allow Dr. Grebing To Testify As To His 'Energy Wave' Theory As There is No Medical or Scientific Support" (Point Two); "It Was Prejudicial Error to Exclude Exhibit 166" (Point Three); and "The Court Should Order A New Trial As The Verdict Was Against the Manifest Weight of the Evidence" (Point Four). These short statements entirely ignore the requirements of Rule 84.04(d)(1). Notably, these points do not identify the legal basis for claimed reversible error, nor do they in any way explain the reasoning to support reversal in this case. See Rule 84.04(d)(1); King, 548 S.W.3d at 442–43. For example, Point Three summarily concludes that the trial court erred in excluding Exhibit 166, but lacks any explanation as to why the trial court's ruling was in error. Similarly, Point Four concludes that the verdict was against the weight of the evidence, but offers no basis for that legal conclusion. Curiously, Revis elected not to submit a reply brief and respond to Dr. Bassman's assertion that her failure to adhere to the requirements of Rule 84.04 required dismissal of her appeal.

Revis's brief blatantly fails to comply with Rule 84.04(d)(1). Revis's gross failure to adhere to our rules of appellate procedure constitutes grounds for dismissal. However, where "meaningful appellate review" is possible, "[w]e may exercise our discretion to review briefs which suffer from violations of Rule 84.04." King, 548 S.W.3d at 442. Indeed, we prefer to review the merits of an appeal rather than dismissing for failure to comply with Rule 84.04. Maskill v. Cummins, 397 S.W.3d 27, 31 (Mo. App. W.D. 2013). Despite Revis's substantially deficient points on appeal, Revis does explain the legal basis for her claims and adequately develops the legal reasons supporting a claim of error in the argument section of her brief. Therein, Revis applies those reasons to the facts of the case, thereby providing this Court the opportunity to review her claims of error without having to become her advocate. For this reason, and only this reason, we exercise our discretion to conduct meaningful review of the merits of Revis's appeal.[3] See id.

## II.     Point One—Cross-Examination on Tort Reform Activities

Revis initially challenges the trial court's refusal to allow her to cross-examine Dr. Grebing about tort reform activities in which Dr. Grebing was involved. Revis posits such questioning would have shown Dr. Grebing's general and personal bias against plaintiffs in medical malpractice cases.

During cross-examination of an expert witness, parties are "given wide latitude to test qualifications, credibility, skill or knowledge, and value and accuracy of opinion." Montgomery v. Wilson, 331 S.W.3d 332, 341 (Mo. App. W.D. 2011) (internal quotations and citations omitted).

---

[3] Given the discretionary nature of this Court's decision to substantively review the points on appeal despite the briefing deficiencies, counsel is admonished that other panels may have properly exercised their discretion to preclude substantive review given the substantial failure to comply with Rule 84.04. See, e.g., Estate of Hanks, 589 S.W.3d at 606.

"The jury is entitled to know information that *might* affect the credibility of the witness and the weight to give to his testimony." Id. (alterations omitted) (emphasis added). At the same time, the trial judge is given discretion in limiting the scope of such cross-examination of witnesses to exclude evidence that is too remote, misleading, confusing, or cumulative. Robinson v. Empiregas Inc. of Hartville, 906 S.W.2d 829, 840-41 (Mo. App. S.D. 1995). See also State v. Montgomery, 901 S.W.2d 255, 257 n.* (Mo. App. E.D. 1995) ("Whether evidence is too remote to be material is largely a matter of discretion for the trial court."); Pittman v. Ripley Cty. Mem'l Hosp., 318 S.W.3d 289, 294 (Mo. App. S.D. 2010) (holding probative evidence may be excluded at the trial court's discretion if the evidence would be cumulative or confuse or mislead the jury).

"[I]t is well-settled that the interest or bias of a witness and his relation to or feeling toward a party *are never irrelevant matters*." Mitchell v. Kardesch, 313 S.W.3d 667, 676 (Mo. banc 2010) (internal quotations and citations omitted) (emphasis added). Thus, "Cross-examination about *any* issue, regardless of its materiality to the substantive issues at trial, is permissible if it shows the bias or interest of the witness because a witness's bias or interest could affect the reliability of the witness's testimony on *any* issue." Id. (emphasis added). However, while cross-examination regarding bias or prejudice can always be shown, it is "subject to the limitations 'imposed by the trial judge in his sound discretion.'" Wilson, 331 S.W.3d at 341 (quoting Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 868-69 (Mo. banc 1993)).

Our Court recently addressed this issue in Koelling, 558 S.W.3d 543. In Koelling, a defense expert testified at his deposition he was sued multiple times for medical malpractice and one suit resulted in a verdict against him. Id. at 547-48. During his deposition, he testified that, initially after being sued, he felt "badly" about the legal system, he was "angered," "frustrated," and "sad." Id. at 547. He also testified in his deposition "[t]o this day" he did not believe the case

8

resulting in a verdict against him "was an appropriate conclusion." Id. at 548. He testified in his deposition he had "gotten over" his feelings of hostility and did not feel he held a grudge or bias against medical malpractice claims. Id. At trial, the plaintiff attempted to cross-examine the defense expert about his involvement in past medical malpractice lawsuits, arguing the evidence was relevant to show his bias against medical malpractice claims. Id. at 549-50. The trial court prohibited such questioning. Id. at 550.

On appeal, the plaintiff argued the trial court abused its discretion by prohibiting her from cross-examining the defense expert about his involvement in past medical malpractice lawsuits because such evidence was relevant to show his bias against medical malpractice claims. Id. Our Court agreed and reversed the trial court's ruling. Id. at 554. We reasoned, "While the trial court may properly limit the scope and extent of cross-examination into the witness' bias or prejudice, *it is not within the trial court's discretion to prevent it entirely*." Id. at 552 (alterations omitted) (emphasis added) (quoting Newell Rubbermaid, Inc. v. Efficient Sols., Inc., 252 S.W.3d 164, 172 (Mo. App. E.D. 2007)). We held that, while "the trial court might have, within its discretion, limited the scope of [the plaintiff]'s inquiry about prior malpractice lawsuits against [the defense expert] to prevent juror confusion or restrict potentially cumulative evidence," the trial court abused its discretion by prohibiting the plaintiff from inquiring about the defense expert's litigation experience at all. Id.

Dr. Bassman maintains "the facts in Koelling are vastly different" from those presented here. He urges us to find Koelling distinguishable because cross-examination of the defense expert in Koelling sought to reveal his personal feelings of anger, frustration, and defensiveness after being sued by plaintiffs in medical malpractice lawsuits, whereas cross-examination of Dr. Grebing sought to reveal his involvement in tort reform efforts against allowing plaintiffs to file

9

certificates of merit after the statute of limitations on a medical malpractice claim expired and for damage caps.

While the bias Appellant sought to expose in Dr. Grebing is less personal than the bias sought to be exposed in Koelling, we are unconvinced this distinction compels a different result than Koelling. Appellant's offer of proof demonstrated that, on cross-examination, Dr. Grebing would have denied he engaged in tort reform activities while he was president of his local medical society, despite the fact he testified in an earlier deposition it was "fair to say" he engaged in tort reform activities in his role as president. Dr. Grebing would have testified he advocated against allowing plaintiffs to file certificates of merit after the statute of limitations on a medical malpractice claim had run and for damage caps. Notably, Dr. Grebing testified he advocated for tort reform as both a member of the medical society *and* as a medical professional.

That Dr. Grebing's tort reform efforts were in his capacity as president of his local medical society do not preclude those efforts from serving his own personal ends. Dr. Grebing's denial of medical malpractice tort reform activities despite his earlier deposition testimony may have impacted his credibility with the jury. Also, his advocacy as a medical professional for damage caps could be viewed by the jury as a direct financial interest in medical malpractice tort reform. The jury could conclude Dr. Grebing's efforts to cap or limit monetary awards against all doctors in Illinois, including himself, played a role in his testimony in this case. Dr. Grebing's testimony would have tended to show he was prejudiced against plaintiffs in medical malpractice suits and had a bearing upon his veracity as a witness. It is up to the jury to determine if Dr. Grebing's tort reform efforts were a source of potential bias or prejudice influencing his testimony, not a court. Mitchell, 313 S.W.3d at 676.

10

While Koelling is factually dissimilar, its context is directly on point. Here, the trial court might have, within its discretion, limited the scope of Appellant's inquiry about Dr. Grebing's involvement in tort reform to prevent juror confusion.[4] Instead, the trial court prohibited Appellant from inquiring about Dr. Grebing's tort reform efforts at all. In doing so, the trial court foreclosed a subject Appellant sought to use to demonstrate Dr. Grebing's bias. Following Koelling, it was not within the trial court's discretion to prohibit *all* inquiry into his involvement with tort reform. The trial court's refusal to allow Appellant to cross-examine about this matter was an abuse of discretion.

Point One is granted. Because the issues raised in the remainder of Revis's points may recur on retrial, we will address them in the order presented in her brief.

## III.    Point Two—Reliability of Expert Testimony

Revis next asserts that Dr. Grebing's testimony as to the cause of Revis's tissue necrosis was unsupported by any medical literature and thus did not satisfy the reliability requirement for expert testimony set forth in Section 490.065.

To prevail on appeal for the admission or exclusion of expert testimony, an appellant bears the burden of proving the trial court abused its discretion and prejudice resulted. Jones, 569 S.W.3d at 53; Matter of Care & Treatment of Lester Bradley v. State, 554 S.W.3d 440, 452 (Mo. App. W.D. 2018) (internal citation omitted).

Section 490.065 governs the admissibility of expert opinion testimony. Jones, 569 S.W.3d at 53; see also State v. Boss, 577 S.W.3d 509, 517 (Mo. App. W.D. 2019). The legislature amended

---

[4] One such limitation would be the minute details of the pending Illinois legislation, which could confuse or distract the jury. See e.g., Siegel v. Ellis, 288 S.W.2d 932, 940 (Mo. 1956) (holding there is no abuse of discretion where a trial court limited cross-examination to "the essentials" of a collateral matter and excluded questioning about "certain details" because allowing such detailed questioning "would have tended to confuse and distract the jury from a proper determination of the issues in the case on trial."); State v. Isa, 850 S.W.2d 876, 896 (Mo. banc 1993) (holding the trial court is permitted broad discretion to limit the scope of cross-examination as to collateral matters, including limiting inquiry into details of matters that are "trivial or [of] minor importance.").

11

Section 490.065 in 2017 and "adopt[ed] an approach to the admissibility of expert opinions that is consistent with federal standards[.]" State ex rel. Gardner v. Wright, 562 S.W.3d 311, 315–16, 317 (Mo. App. E.D. 2018) (recognizing that federal precedent offers strong persuasive authority for interpreting the new Missouri statute); Jones, 569 S.W.3d at 53.[5] Under Section 490.065.2, which applies to medical malpractice actions such as Revis's, a trial court should admit an expert's testimony if it finds the following statutory criteria are met:

(1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) The testimony is based on sufficient facts or data;
    (c) The testimony is the product of reliable principles and methods; and
    (d) The expert has reliably applied the principles and methods to the facts of the case[.]

Section 490.065.2(1); see also Jones, 569 S.W.3d at 53 (citing Section 490.065.2). Missouri courts have interpreted Section 490.065.2 as a three-part test for the admissibility of expert testimony: "(1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable." Jones, 569 S.W.3d at 54 (citing Wright, 562 S.W.3d at 319).

Revis's point on appeal focuses on the reliability prong. "Testimony is reliable if it is 'based on sufficient facts or data, reliable principles and methods and reliable application thereof.'" Jones, 569 S.W.3d at 54 (quoting Wright, 562 S.W.3d at 319); see also State ex rel. Headrick v. Lewis, ED 108444, 2019 WL 7341480, at *2 (Mo. App. E.D. Dec. 31, 2019) (citing Wright, 562 S.W.3d at 319) (granting a writ of prohibition against a court-ordered test involving ingestion or

---

[5] Because Dr. Bassman cites to RSMo 2016 in his brief, we note that Revis specifically cited the amended 2017 version of Section 490.065 in her pre-trial motion in limine and also discussed the applicability of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) at the hearing on September 13, 2018. At that motion hearing, the trial court acknowledged the applicability of the amended statute and the relevance of Daubert, stating that to the extent that it was going to consider the thirteenth motion in limine item as a Daubert objection, it would be taken under advisement for review of the deposition and application of the statutory standard.

injection of a substance where no substantial evidence established that the testing would be administered according to reliable principles and methods or would produce reliable results). A trial court must "independently assess" the reliability of the facts and data on which the expert relies. Kivland, 331 S.W.3d at 311 (quoting State Bd. Of Registration for Healing Arts v. McDonagh, 123 S.W.3d 146, 156 (Mo. banc 2003)). "[N]o single factor is necessarily dispositive of the reliability of a particular expert's testimony." Jones, 569 S.W.3d at 54 (quoting Wright, 562 S.W.3d at 318, 319). Further, "past experience may inform an expert's testimony in a case . . . [as] [n]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Jones, 569 S.W.3d at 56 (quoting Wright, 562 S.W.3d at 321). Courts have expressed a preference for admission of expert testimony where it "rests upon good grounds, based on what is known" in order that it "be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." Id. (citing Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014)).

At trial, Revis advanced a theory of causation that her necrosis was caused by the delay between the time of injury and the time of surgery. Dr. Bassman's expert witness, Dr. Grebing, offered medical testimony on an alternative theory of causation of Revis's necrosis. Specifically, Dr. Grebing testified the type of fracture Revis suffered occurs during a forceful trauma resulting in a piece of the calcaneal bone pulling off and moving through the tissue, and the necrosis was caused by the high-force energy from Revis's fall being absorbed by the soft tissue resulting in tissue death. While Revis maintains Dr. Grebing's causation testimony did not meet the reliability standard in Section 490.065.2, Dr. Bassman counters that Dr. Grebing's causation testimony met the standard because it was based on sufficient facts and reliable principles in that Dr. Grebing relied on his skill, education, training, and experience, Revis's medical records, and medical

journal articles, including one article discussing soft tissue death resulting from disruption of blood flow. We agree Dr. Grebing's testimony met the standards of reliability under Section 490.065.2 and find no error in the trial court's ruling allowing such testimony.

As Revis notes, an expert witness's opinion must have a rational basis and cannot be based upon mere conjecture or speculation. See Rigali v. Kensington Place Homeowners' Ass'n, 103 S.W.3d 839, 845 (Mo. App. E.D. 2003). Our review of the record before us does not support Revis's position that Dr. Grebing's opinion lacked any rational basis. Revis suffered a calcaneal avulsion fracture. An avulsion fracture was described in the record as a piece of bone being pulled away by a tendon or ligament. Both expert witnesses in the case largely agreed Revis's calcaneal avulsion fracture was a rare type of fracture. Revis's own expert witness, Dr. Vosseler, acknowledged medical literature regarding calcaneal avulsion fractures is limited due to the rarity of the injury. In fact, Dr. Vosseler testified his review of medical articles focused on the onset of necrosis after the occurrence of an avulsion fracture generally, including a particular article about a tongue type calcaneus fracture, which he noted was not the same type of fracture Revis suffered. We are not persuaded the lack of numerous existing studies on a given topic dictates that no rational opinion can be offered on that topic. Nowhere does Section 490.065 or the Federal Rules of Evidence ("FRE") equivalent require complete identity or exact similarity between the proffered opinion and the medical study relied on in forming the opinion. See e.g., McDonagh, 123 S.W.3d at 157 (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595–94 (1993)) (noting it is consistent with the FRE and Daubert-standard that a lack of controlled studies is not dispositive but rather one factor to be considered in determining the admissibility of testimony regarding the use of chelation therapy to treat vascular disease); Rider v. Sandoz Pharm. Corp., 295 F.3d 1194, 1198 (11th Cir. 2002) (noting that the lack of epidemiological studies on the nexus between

14

external factors and disease is not fatal to a plaintiff's toxic tort action); Kennedy v. Collagen Corp., 161 F.3d 1226, 1229 (9th Cir. 1998) (internal citation omitted) (noting courts' recognition that the Daubert standard does not require expert testimony to be based on epidemiological data or identical case studies to prove causation). Here, Dr. Grebing testified his causation theory was a logical conclusion based on his extensive experience in the field of orthopedic surgery, including the precise calcaneal avulsion fracture surgery at issue, and informed by a medical journal article about disrupted blood flow sustained with an avulsion fracture. To hold the trial court erred in considering Dr. Grebing's testimony, we would have to ignore the principles well developed under the FRE and in post-Daubert cases. Dr. Grebing's testimony was a permissible extrapolation of medical principles sufficient to meet the expert reliability standard, as an expert is not required to have done independent research on the subject and may "draw a conclusion from a set of observations based on extensive and specialized experience." Wright, 562 S.W.3d at 319 (internal quotation omitted).

To prevail at trial, Revis had to prove a delay in treatment caused her necrosis. The fact Revis advanced a different theory of causation for her necrosis does not preclude Dr. Grebing's causation theory. The parties presented the jury with competing theories of whether the injury was caused by pressure exerted by the bone fragment while awaiting surgery, or from the traumatic force of the impact when Revis fell from the ladder. Rather than deeming any causation theory contrary to Revis's theory wholly unreliable, it was appropriate for the trial court to submit both experts' opinions to the jury. See Jones, 569 S.W.3d at 56 (citing Johnson, 754 F.3d at 562). "[T]he trial court's role as gatekeeper under the federal rules and our statute is not intended to serve as a replacement for the adversary system." Wright, 562 S.W.3d at 322. Indeed, "[a]ny weakness in the factual underpinnings of the expert's opinion . . . goes to the weight that testimony

15

should be given and not its admissibility." Kivland, 331 S.W.3d at 311 (quoting Elliott v. State, 215 S.W.3d 88, 95 (Mo. banc 2007)).

Accordingly, we hold that the trial court did not err in determining that Dr. Grebing's testimony was sufficiently reliable to be admissible under Section 490.065. See Jones, 569 S.W.3d at 53.[6]

Point Two is denied.

## IV.     Point Three—Lack of Foundation Exclusion

In Point Three, Revis argues that the trial court erred in excluding Exhibit 166, which prejudiced Revis because she would have used its medical database information to contradict Dr. Bassman's expert witness testimony.

The sufficiency of an exhibit's foundation, as well as the scope of cross-examination, lies within the sound discretion of the trial court. See Asset Acceptance v. Lodge, 325 S.W.3d 525, 528 (Mo. App. E.D. 2010) (internal citation omitted); Embree, 907 S.W.2d at 325. Thus, to merit reversal, an appellant must show prejudicial error that "materially affects the merits of the action[.]" Asset Acceptance, 325 S.W.3d at 529 (internal quotation omitted). "Before a document may be received in evidence, it must meet a number of foundational requirements including relevancy, authentication, the best evidence rule, and hearsay." Id. at 528 (citing Estate of West

---

[6] Revis additionally argues in Point Two that the trial court also erred in not holding a hearing on Dr. Grebing's expert witness qualifications. Revis raises a distinct point of error, and Rule 84.04 does not permit multiple claims of error within a single point on appeal, which is considered multifarious. See Schnurbusch, 571 S.W.3d at 205 (internal citations omitted) (noting that "[a] multifarious point also does not comply with Rule 84.04(d) and fails to preserve anything for review"). Assuming *arguendo* that such a claim was preserved, Revis's point of error would nonetheless fail because a formal Daubert hearing is not required by statute. The trial court agreed on the record at the motion hearing to consider the argument in Revis's motion in limine in lieu of a formal Daubert challenge in the event that a hearing was required, which it is not under Section 490.065. Even under the FRE, federal courts have rejected claims that a trial court abuses its discretion by failing to hold an evidentiary hearing prior to its Daubert ruling, because "[a]lthough in limine hearings are generally recommended prior to Daubert determinations, they are not required. The only legal requirement is that the parties 'have an adequate opportunity to be heard' before the district court makes its decision." Grp. Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 761 n.3 (8th Cir. 2003) (internal citations omitted). Here, Revis had an opportunity to be heard on her expert witness challenge in both her motion in limine and at the motion hearing, thus there would be no meritorious charge of trial court error on this additional point.

v. Moffatt, 32 S.W.3d 648, 653 (Mo. App. W.D. 2000)). "The authenticity of a document cannot be assumed, and what it purports to be must be established by proof." State v. Pylypczuk, 527 S.W.3d 96, 102 (Mo. App. W.D. 2017) (quoting Estate of West, 32 S.W.3d at 653). "Thus, before a document can be admitted into evidence and considered by the trial court, its proponent must show that it is, in fact, what it is purported to be." Asset Acceptance, 325 S.W.3d at 528 (citing Estate of West, 32 S.W.3d at 653).

In addition, "a party seeking to cross-examine a witness by means of an article or treatise must lay a foundation as to its authoritativeness." Kansas City v. Dugan, 524 S.W.2d 194, 196 (Mo. App. K.C.D. 1975); see also Embree, 907 S.W.2d at 325. A medical journal article is a proper subject of cross-examination when its proponent has demonstrated its authoritativeness by: (1) judicial notice, (2) getting the witness being cross-examined to concede its authoritativeness, or (3) establishing its authoritativeness by other experts. Embree, 907 S.W.2d at 325.

Exhibit 166 is a seventeen-page printout of medical treatment information on "calcaneus fractures" accessed through an electronic search in the medical database Up-To-Date, conducted on September 19, 2018. Up-To-Date is a treatment guide provided to physicians by the hospital where Revis was treated. When Revis sought to cross-examine Dr. Grebing with Exhibit 166, Dr. Bassman objected that the Exhibit lacked proper foundation. In particular, Dr. Bassman noted no prior witness had referred to Exhibit 166—only to the existence of the database—nor had any witness identified the database as authoritative. Dr. Bassman further objected Exhibit 166 had not been authenticated by the testimony of Dr. Gregory Beirne ("Dr. Beirne"), the emergency room physician who first treated Revis. Dr. Beirne testified only that he knew of the database, which was used by hospital physicians. The trial court sustained the objection. Revis then tried to lay a

foundation for Exhibit 166 through his cross-examination of Dr. Grebing, but Dr. Grebing testified he was not sufficiently familiar with the database.

Revis maintains that she laid a proper foundation for Exhibit 166 with Dr. Beirne. During Dr. Beirne's testimony, Revis attempted to do a live search of the medical database on the computer. The trial court did not permit the live search of the database. Revis never presented Dr. Beirne with Exhibit 166, nor did Dr. Beirne testify that he had used the database in the course of treating Revis. Later, when seeking to cross-examine Dr. Grebing using Exhibit 166, Revis maintained she had laid a proper foundation for the Exhibit through Dr. Beirne. "[B]are assertions by counsel do not prove themselves and are not evidence of the facts presented." Pylypczuk, 527 S.W.3d at 101 (quoting Andersen v. Osmon, 217 S.W.3d 375, 381 (Mo. App. W.D. 2007)) (noting that statements by counsel do not provide sufficient foundation to support admission of an exhibit). The trial court did not abuse its discretion in declining to rely on Revis's statements when assessing whether Revis laid a sufficient foundation for Exhibit 166. See id.

Our review of Exhibit 166 and the trial transcript finds ample support for the trial court's decision to exclude Exhibit 166 for lack of foundation. In particular, Exhibit 166 presents several timing issues. Revis initially sought to present the contents of Exhibit 166 through a live search of the database on the computer before the jury. However, because the database is live and self-updating, what Revis would have retrieved from the database at trial in December 2018 would not necessarily be—and in fact, almost certainly would not be— the same information physicians would have retrieved at the hospital had they accessed the database at the time of Revis's injury in January 2013. Indeed, Exhibit 166 notes that its medical literature review is current through August 2018 and updated as recently as May 30, 2018. Because Exhibit 166 contains treatment information from articles written after the date of Revis's treatment, its contents could not have

18

been relied on by Dr. Bassman and do not reflect the general state of the medical knowledge at the time of Revis's treatment. The record before us does not establish whether the medical knowledge about calcaneal fractures in 2018 informs the jury about whether Dr. Bassman met the standard of care in 2013.

Revis's failure to establish the authoritativeness of Exhibit 166 further validates the trial court's ruling to exclude the Exhibit. Dr. Grebing did not concede to the authoritativeness of Exhibit 166, nor did Revis attempt to prove the authoritativeness of Exhibit 166 through Dr. Beirne. See Embree, 907 S.W.2d at 325–26 (affirming the trial court's sustaining a lack-of-foundation objection to a medical journal article proffered during cross-examination where the witness gave no indication he was aware of the journal article nor provided evidence of the article's acceptance and accreditation in the medical profession); Dugan, 524 S.W.2d at 196–97 (affirming the trial court's exclusion of a one-column squib article in the comment section of the Journal of the American Medical Association because the proponent did not lay a proper foundation by establishing the article's authoritativeness). Revis argued before the trial court that Exhibit 166 was not just a medical article but rather a treating book with inherent indicia of reliability because the exhibit is from a national database to which the hospital subscribes. While Dr. Beirne testified to his knowledge of the database and its use by physicians at the hospital, he offered no other testimony regarding the database. Likewise, Dr. Grebing testified on cross-examination only that he had heard of the database because his hospital was considering acquiring it or a similar database. Neither the testimony of Dr. Beirne nor Dr. Grebing demonstrated the authenticity or general authoritativeness of Exhibit 166 to lay a sufficient foundation. See Pylypczuk, 527 S.W.3d at 101.

Because Revis failed to lay an adequate foundation, the trial court did not abuse its discretion in sustaining the objection to exclude Exhibit 166. See Embree, 907 S.W.2d at 325.

19

Point Three is denied.

## V.     Point Four—Weight of the Evidence

In her fourth and final point on appeal, Revis claims the trial court should have granted her motion for new trial because the jury's verdict was against the weight of the evidence. Specifically, Revis contends all of the medical evidence only supported the conclusion that the delay in surgery was the cause of Revis's heel necrosis.

"[A] trial court alone has discretion to grant or deny a motion for new trial on the ground that the verdict in favor of the defendant was against the weight of the evidence." Beverly v. Hudak, 545 S.W.3d 864, 878 (Mo. App. W.D. 2018) (internal quotation omitted). Because "[i]t is within the exclusive province of the trial court to determine if a jury's verdict is against the weight of the evidence[,] [a]n appellate court will interfere with a jury verdict only if there is a complete absence of probative facts to support a jury verdict." Burbridge v. Union Pac. R. Co., 413 S.W.3d 649, 656 (Mo. App. E.D. 2013) (internal quotation omitted); Hudak, 545 S.W.3d at 878 (internal quotation omitted) ("The trial court's overruling a motion for new trial on that ground constitutes a conclusive determination that cannot be overturned on appeal.") (holding in a medical negligence case that an appellate court will not overturn the verdict and remand for a new trial on the ground that the verdict was against the weight of the evidence).

A plaintiff who did not prevail at trial does not merit a reversal of the judgment on appeal merely by reciting the evidence that supported her claim. This approach addresses only "the weight of the evidence and credibility of witnesses, matters reserved to the discretion of the jury" and ignores the substantial probative evidence from which a jury could find in favor of the defendant. Burbridge, 413 S.W.3d at 656. Moreover, the plaintiff bears the burden of proof at trial, and a verdict for defendant need not be supported by any evidence. Hudak, 545 S.W.3d at 877–78. "Where a party bears the burden of proof, it is within the jury's prerogative to find against

20

that party, even if that party's evidence is uncontradicted and unimpeached." Id. (internal quotation omitted); see also Pegler v. May, 844 S.W.2d 458, 459 (Mo. App. E.D. 1992).

While Revis emphasizes the favorable evidence supporting her claim, her point on appeal fails because she ignores the evidence supporting the jury's verdict in favor of Dr. Bassman. The record before us does not reveal a complete absence of probative facts that reasonably could support the jury's verdict in favor of Dr. Bassman. See Burbridge, 413 S.W.3d at 656. As the plaintiff in the medical negligence action, Revis bore the burden of proof to show that Dr. Bassman's actions fell below the standard of care. See Hudak, 545 S.W.3d at 877–78. The jury was free to disbelieve Revis's evidence that the necrosis was caused by any delay between the injury and the surgery. The jury was free to believe the testimony of Dr. Grebing that Dr. Bassman met the standard of care expected of him, and that Revis's skin necrosis resulted from factors other than the treatment timeframe, including the initial forceful impact of the underlying injury. See id.; Burbridge, 413 S.W.3d at 656. Revis's point on appeal goes to matters of evidentiary weight properly decided by a jury. See Burbridge, 413 S.W.3d at 656. Because the record contains probative facts supporting the jury's verdict, we hold the trial court did not err in denying Revis's motion for new trial. See Hudak, 545 S.W.3d at 878; Burbridge, 413 S.W.3d at 656.

Point Four is denied.

### Conclusion

The judgment of the trial court is reversed, and the case is remanded for a new trial.

_____
Philip M. Hess, Presiding Judge

Lisa P. Page, J., concurs.
Kurt S. Odenwald, J., dissents in part in a separate opinion.

21



# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| AMY REVIS, | ) | No. ED107663 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Joseph S. Dueker |
| DONALD BASSMAN, M.D., | ) | |
| | ) | |
| Respondent. | ) | FILED: March 3, 2020 |

## Dissent

I respectfully dissent as to Point One only. Because the trial court reasonably exercised its considerable discretion when making its evidentiary rulings, I would hold that the trial court did not err when it excluded testimony of the expert witness's tort reform activities, and affirm the judgment of the trial court.

## Discussion

**I.      Point One—Cross-Examination on Tort Reform Activities**

I acknowledge that "[t]he interest or bias of a witness and his relation to or feeling toward a party are never irrelevant matters." Koelling v. Mercy Hosps. E. Cmtys., 558 S.W.3d 543, 550 (Mo. App. E.D. 2018) (quoting Mitchell v. Kardesch, 313 S.W.3d 667, 676 (Mo. banc 2010)). Importantly, bias includes "all varieties of hostility or prejudice against the opponent personally or of favor to the proponent personally." State v. J.L.S., 259 S.W.3d 39, 44 (Mo. App. W.D. 2008) (internal quotation omitted). However, evidence proffered to show bias is not given a free

pass to admissibility merely because a party alleges that the evidence shows bias. See Mueller v. Ruddy, 617 S.W.2d 466, 479 (Mo. App. E.D. 1981) (noting exclusion is appropriate where the offer of proof fails to elicit evidence tending to prove or disprove bias); see also Andersen v. Osmon, 217 S.W.3d 375, 381 (Mo. App. W.D. 2007) (internal citation omitted) ("Bare assertions by counsel do not prove themselves and are not evidence of the facts presented."). While "pecuniary interest, bias or prejudice of a witness is not collateral and can always be shown[,]" evidence of such bias is "***subject to the limitations imposed by the trial judge in his sound discretion***." Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 869 (Mo. banc 1993) (internal quotation omitted) (emphasis added) (affirming a trial court's admission of cross-examination into a medical expert witness's bias related to receiving grant money from the manufacturer of the vaccine that was the subject of the malpractice claim as well as testifying for that manufacturer and similar companies against plaintiffs in eighty to one hundred cases); see also Coyle v. City of St. Louis, 408 S.W.3d 281, 290 (Mo. App. E.D. 2013) (internal quotation omitted) (noting relevant evidence may be excluded "when any recognizable ground exists on which the trial court could have rejected the evidence").

I am mindful that "[i]n determining whether the trial court abused its discretion in excluding evidence, the focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding the evidence." Id. at 289 (internal quotation omitted); Williams v. Trans States Airlines, Inc., 281 S.W.3d 854, 872 (Mo. App. E.D. 2009). This court does not find an abuse of discretion unless the trial court's exclusion of the evidence was clearly against the logic of the circumstances and so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. Williams, 281 S.W.3d at 872 (internal citation omitted); Embree v. Norfolk & W. Ry. Co., 907

2

S.W.2d 319, 327 (Mo. App. E.D. 1995) (internal citation omitted). Furthermore, the improper exclusion of evidence will cause a reversal only when the exclusion of evidence materially affected the outcome of the case. Coyle, 408 S.W.3d at 290 (citing Williams, 281 S.W.3d at 872).

Here, Dr. Bassman filed a motion in limine to prevent Revis from offering evidence of Dr. Grebing's activities related to tort reform in his role as president of a local medical society. Dr. Grebing served as president of the Madison County Medical Society from 2012 to 2013. Revis and Dr. Bassman presented their arguments on the alleged bias evidence through written memoranda and at a hearing on the record, during which Revis made an offer of proof through questioning Dr. Grebing and using portions of Dr. Grebing's deposition testimony. In particular, Revis elicited testimony from Dr. Grebing that, through letters and/or phone calls on behalf of the medical society, he advocated in favor of the State of Illinois enforcing its existing statutes of limitations for certificates of merit in relation to medical malpractice actions, as well as reinstating statutory limits on damage awards. The trial court granted the motion in limine.

Revis maintains the trial court committed reversible error by precluding her questioning into Dr. Grebing's tort reform activities through his role in the medical society, suggesting that her offer of proof revealed Dr. Grebing's bias against medical malpractice plaintiffs like Revis. Dr. Bassman counters that the line of questioning sought by Revis did not reveal bias on the part of Dr. Grebing in that the offer of proof failed to show Dr. Grebing personally pursued any tort reform activities but acted only in his capacity as a member of the medical society. Dr. Bassman also posits that the subject matter was too tangential and remote to be a source of personal bias as Dr. Grebing only presided over the medical society's meetings where such tort reforms were

3

discussed and, in that capacity, he supported all resolutions passed by the society on those topics.[1]

Revis and the majority opinion rely on Koelling, a recent Eastern District opinion reaffirming the relevance of bias evidence and commenting on the scope of cross-examination into expert witness bias. 558 S.W.3d 543. Koelling accurately states the law regarding bias evidence and cautions against restricting cross-examination designed to uncover bias. However, the facts before us are significantly distinguishable from the facts and issues in Koelling and warrant a different result.

In Koelling, the evidentiary dispute concerned an expert witness's prior litigation history—specifically, prior medical malpractice lawsuits that had been filed against the expert witness. Id. at 552. The trial court granted the defendant's motion in limine to prevent cross-examination into any of the expert witness's personal prior litigation history on the grounds that such personal history was irrelevant and collateral to the issues of the case and would result in juror confusion. Id. at 549–50. The expert witness in Koelling had admitted in deposition that he personally had been named as a defendant multiple times in medical malpractice suits; that a particular judgment against him left him angry and desiring to change the system; and subsequent to that judgment, he never reviewed cases as an expert witness for a plaintiff. Id. at 547–49. In Koelling, we held the trial court committed reversible error in precluding such cross-examination, stating that "[e]vidence tending to show that [the expert witness] had an interest in coloring his own opinion testimony *in order to serve his own personal ends* was '*essential* to

---

[1] The record clearly shows any resolutions passed by the Madison County Medical Society were sent to the state medical association and were not sent by Dr. Grebing or the Madison County Medical Society to the Illinois State legislature or to individual legislators. The evidence proffered by Revis in her offer of proof contains testimony that Dr. Grebing never traveled to the Illinois state capitol to lobby for tort reform efforts.

4

the jury's process of determining the appropriate weight to be given to [his] testimony.'" Id. at 553 (internal quotation omitted) (first emphasis added).

Prior litigation history is a well-known and often-mined source of potential bias and prejudice, arising in widespread litigation contexts from witness impeachments to juror disqualifications to requests for changes of judge. See id. at 552 (internal citations omitted). Koelling presented a particularly ripe avenue for revealing personal bias because the cross-examination did not merely probe the expert witness's participation as an expert witness in previous trials, for which some statistical testimony was admitted, but critically, involved the expert witness's personal and individual experiences of being sued by plaintiffs in medical malpractice lawsuits. See id. at 551. Any medical expert witness may have opinions on the broad subject of tort reform in the area of medical malpractice. For such evidence to be admissible, the proponent must establish such opinions as being a source of potential bias or prejudice. In Koelling, the cross-examination of the expert witness focused on the witness's personal feelings of anger, frustration, and defensiveness over having been sued and having had judgments entered against him. See id. Here, contrastingly, Revis was not precluded from questioning Dr. Grebing about his prior litigation history, either being named in lawsuits or serving as an expert for plaintiffs or defendants. Revis was permitted to thoroughly cross-examine Dr. Grebing on issues that may show his personal bias. The only limitation imposed by the trial court was the sole issue of whether Revis could question Dr. Grebing regarding actions taken by him as a member of a local medical society, focusing on his support of two resolutions during the one year he served as president. Revis's offer of proof revealed nothing more than that Dr. Grebing presided over a local organization of medical professionals that discussed and advocated for past statutory caps and compliance with existing Illinois state law with respect to

5

certificates of merit. [2] The trial court found that this offer of proof did not present evidence of bias or prejudice, particularly in light of Revis's reliance on Koelling in which the offer of proof so tellingly revealed bias related to the witness' personal litigation history. Indeed, unlike the court in Koelling, the trial court here expressly acknowledged at trial that the interest, bias, or prejudice of a witness toward a particular party is relevant. Recognizing the legal issues before it, the trial court was sensitive to the distinction between actions pursued on one's own behalf and the activities described here undertaken in the limited capacity of an officer of a professional organization. See J.L.S., 259 S.W.3d at 44 (internal quotations omitted) (noting "[e]vidence showing bias includes circumstances of the witness's situation that make it probable that he or she has partiality of emotion for one party's cause" that has "a clearly apparent force on the witness"). The trial court considered Revis's offer of proof and found that the proffered evidence did not sufficiently show Dr. Grebing's bias against all medical malpractice plaintiffs. Finding the evidence proffered in the offer of proof to be too tangential and remote to show bias, and recognizing the potential for juror confusion, the trial court exercised is considerable discretion in precluding admission of this limited evidence. I am unwilling to declare and hold the trial court's exercise of discretion erroneous.

Revis had the opportunity to present evidence of alleged bias evidence and failed to do so in her offer of proof. See Mueller, 617 S.W.2d at 479. Thus, I would hold that the longstanding admonition that a trial court abuses its considerable discretion when it prevents cross-

---

[2] The majority finds significance in Dr. Grebing's statement that he advocated for tort reform as both a member of the medical society and as a medical professional. Yet neither the record nor Revis's offer of proof includes any evidence of activity taken by Dr. Grebing with regard to tort reform while he was not president of the Madison County Medical Society. The evidence proffered by Revis in her offer of proof simply did not raise the specter of personal bias as was present in Koelling. I am not persuaded that because all physicians, including Dr. Grebing, may derive some benefit from tort reform legislation, we should hold that the trial court erroneously abused its discretion and acted in a manner so unreasonable and arbitrary so as to shock this Court's sense of justice or somehow indicate a lack of careful consideration.

examination into subjects revealing personal bias was not contravened here. It is a well-established principle of law that the appellate court should not reverse a trial court's decision to exclude evidence under the abuse-of-discretion standard merely because the excluded evidence could have been admissible, or even if the reviewing judges may have admitted such evidence had they functioned as the trial court. Coyle, 408 S.W.3d at 289; Williams, 281 S.W.3d at 872; see also Bella v. Turner, 30 S.W.3d 892, 897 (Mo. App. S.D. 2000) (noting we will affirm a trial court's decision to admit or exclude evidence if it is correct for any reason). Here, the record of the trial court's hearing shows a careful deliberation and consideration of the arguments both for and against the proposed line of questioning. See Coyle, 408 S.W.3d at 290; Embree, 907 S.W.2d at 325. The record amply shows that Revis engaged in lengthy and significant cross-examination into numerous subjects touching on bias and prejudice with Dr. Grebing, including his past litigation history, compensation as an expert witness, qualifications, and medical expertise. See Koelling, 558 S.W.3d at 552. The trial court was not persuaded that the details of Dr. Grebing's limited activities while serving in a local medical society within a narrow timeframe revealed evidence of bias that would aid the jury in weighing Dr. Grebing's testimony. See Callahan, 863 S.W.2d at 869; Koelling, 558 S.W.3d at 550; Coyle, 408 S.W.3d at 289. Considering the limited scope of evidence in Revis's offer of proof, I believe the record does not support a finding that the trial court's ruling lacked careful and deliberate consideration or was otherwise arbitrary. See Coyle, 408 S.W.3d at 290; Bella, 30 S.W.3d at 897; Embree, 907 S.W.2d at 325. Therefore, I would hold the trial court did not abuse its discretion or commit reversible error in precluding cross-examination into Dr. Grebing's activities as a member and president of the Madison County Medical Society. See Coyle, 408 S.W.3d at 290. I would deny Point One.

7

<u>Conclusion</u>

For the foregoing reasons, I respectfully dissent in part. Accordingly, I would affirm the judgment of the trial court.

_____
KURT S. ODENWALD, Judge